UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

BLUE CROSS BLUE SHIELD OF
MICHIGAN,

       Plaintiff,

v

CORIZON HEALTH
INCORPORATED,

       Defendant.

Case No. 22-cv-11598

Hon. Mark A Goldsmith

_____/

Gabe Sybesma (P66632)
Paul Wilk Jr (P83691)
Attorneys for Plaintiff
One Woodward Avenue, Suite 2400
Detroit, MI 48226-5485
(313) 965-7848
gabe.sybesma@kitch.com
paul.wilk@kitch.com

Phillip C Korovesis (P40579)
Attorney for Defendant
150 W Jefferson, Suite 200
Detroit, MI 48226
(313) 225-7000
korvesis@butzel.com

_____/

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
One Woodward Avenue,
Suite 2400
Detroit, Michigan
48226-5485

(313) 965-7900

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO AMEND
ANSWER AND BRIEF IN SUPPORT**

LOCAL RULE CERTIFICATION: I, Gabe Sybesma, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

*/s/ Gabe Sybesma*
Gabe Sybesma (P66632)

NOW COMES Blue Cross Blue Shield of Michigan, by and through their attorneys, Kitch Drutchas Wagner Valitutti & Sherbrook, for their Response to Defendant's Motion to Amend, and requests that this Court deny Defendant's Motion to Amend.

First and foremost, Defendant filed its Motion to Amend on December 20, 2022 (corrected on December 28, 2022) and cited Rule 15(a)(2) of the Federal Rules of Civil Procedure; however, Defendant has entirely ignored this Court's August 19, 2022 Case Management and Scheduling Order (**Exhibit A**), which states that, "parties may not be added or pleadings amended more than 14 days after issuance of this Order, absent a showing of good cause." (**Ex. A at p. 3**). This Motion was initially filed 109 days after the Court's 14-day cut-off and fails to even mention "good cause" as is required by the Court. This Motion should be denied.

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

Furthermore, Defendant's Motion cites to case law and alleges that its' Request for Amendment is absent undue delay, dilatory motive, and bad faith; however, as is discussed at length in Plaintiff's Response Brief, Defendant's request is not only untimely, but is also based upon a clear showing of bad faith and dilatory motives. For that reason, even if the Court is not convinced that this Motion should be denied pursuant to the Court's Scheduling Order, this Motion should be denied because it is not consistent with the requirements of Rule 15 or 16 of the Federal Rules of Civil Procedure.

Finally, Defendant's Motion to Amend its Answer is based upon the addition of an Affidavit, which Defendant claims will provide an outright defense against the claims asserted in Plaintiff's pending Motion for Summary Judgment. However, as is detailed in Plaintiff's corresponding Brief, this Affidavit provides no actual defenses and any amendment to Defendant's Answer would be futile. Therefore, this Motion should be denied.

WHEREFORE, Plaintiff, Blue Cross Blue Shield of Michigan respectfully requests that this Honorable Court deny Defendant's Motion to Amend its Answer.

**Kitch Drutchas**
**Wagner Valitutti &**
**Sherbrook**
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

Respectfully submitted,

KITCH DRUTCHAS WAGNER
VALITUTTI & SHERBROOK


/s/ *Gabe Sybesma*

By:_____

Gabe Sybesma (P66632)
Paul Wilk Jr (P83691)
Attorneys for Plaintiff
One Woodward Avenue, Suite 2400
Detroit, MI 48226-5485
Dated: January 3, 2023          313-965-7848

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

BLUE CROSS BLUE SHIELD OF
MICHIGAN,

      Plaintiff,

v

CORIZON HEALTH
INCORPORATED,

      Defendant.

Case No. 22-cv-11598

Hon. Mark A Goldsmith

_____ /

Gabe Sybesma (P66632)
Paul Wilk Jr (P83691)
Attorneys for Plaintiff
One Woodward Avenue, Suite 2400
Detroit, MI 48226-5485
(313) 965-7848
gabe.sybesma@kitch.com
paul.wilk@kitch.com

Phillip C Korovesis (P40579)
Attorney for Defendant
150 W Jefferson, Suite 200
Detroit, MI 48226
(313) 225-7000
korvesis@butzel.com

_____ /

## BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO AMEND

**Kitch Drutchas**
**Wagner Valitutti &**
**Sherbrook**
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

5

DET02:2554611.1

## ISSUE PRESENTED

**1)** Whether Corizon should be granted leave to amend its Answer pursuant to

Federal Rule of Civil Procedure 15(a)(2).

    a. BCBSM states that the answer is "no".

**Kitch Drutchas
Wagner Valitutti &
Sherbrook**
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

6

## **CONTROLLING AUTHORITIES FOR THE RELIEF SOUGHT**

August 19, 2022 Case Management and Scheduling Order (**Ex. A**)

Federal Rules of Civil Procedure Rule 15 and 16

*Mersen USA–Midland-MI Inc. v. Graphite Machining Services*, 2012 WL 3060922 at *1 (E.D. Mich. July 26, 2012)

*Foman v. Davis*, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962)

*Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003)

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

## **INTRODUCTION**

On December 20, 2022, Defendant filed its Motion to Amend its Answer. Defendant requests that it be allowed to file an Amended Answer, which attaches an Affidavit signed by Isaac Lefkowitz. This Affidavit was signed by Mr. Lefkowitz on December 13, 2022 and Defendant argues that this Affidavit is sufficient evidence to deny Plaintiff's Account Stated and Breach of Contract claim, rendering Plaintiff's Motion for Summary Judgment, moot. Defendant relies on the Federal Rules of Civil Procedure Rule 15 and *Mersen USA-Midland Inc. v Graphite Machining Services*, to claim that this amendment comes with no undue delay, bad faith, or dilatory motive.

However, Defendant has entirely ignored this Court's August 19, 2022 Case Management and Scheduling Order (**Ex. A**), which states that, "parties may not be added or pleadings amended more than 14 days after issuance of this Order, absent a showing of good cause." (**Ex. A at p. 3**). This Motion was initially filed 109 days after the Court's 14-day cut-off and fails to mention "good cause" as is required by the Court. Defendant has failed to comply with a clear Order of the Court and this Motion should be denied. This analysis of a request to amend a pleading is governed by Rule 16 of the Federal Rules of Civil Procedure and Defendant fails to acknowledged both Rule 16 and this Court's Order.

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
One Woodward Avenue,
Suite 2400
Detroit, Michigan
48226-5485

(313) 965-7900

8

Furthermore, when looking at Defendant's actions throughout this case and the alleged "evidence" stated in the Affidavit, it is clear that this Motion and Affidavit are nothing short of undue delay, bad faith, and gamesmanship being employed by Defendant. Therefore, Plaintiff, Blue Cross Blue Shield of Michigan respectfully requests that this Honorable Court deny Defendant's Motion to Amend its Answer.

## ARGUMENT

### I. Defendant's Motion should be denied as Defendant blatantly ignored this Court's Case Management and Scheduling Order.

Defendant filed its Motion to Amend on December 20, 2022 (corrected on December 28, 2022) and cited Rule 15(a)(2) of the Federal Rules of Civil Procedure as well as the standard set forth in *Foman v. Davis*, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962). However, this is not the appropriate standard for a Motion to Amend a pleading in the current case. In fact, by relying on a case from 1962, Defendant has completely ignored Rule 16 of the Federal Rules of Civil Procedure as well as a direct Order of this Court.

On August 19, 2022, this Court issued a Case Management and Scheduling Order pursuant to Rule 16(b) of the Federal Rules of Civil Procedure. (**Ex. A**) This Court's Order states, "parties may not be added or pleadings amended more than 14 days after issuance of this Order, absent a showing of good cause." (**Ex. A at p. 3**).

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
One Woodward Avenue,
Suite 2400
Detroit, Michigan
48226-5485

(313) 965-7900

9

Defendant's Motion was initially filed 123 days after August 19th and is clearly outside of the deadline issued by this Court.

According to the Sixth Circuit Court of Appeals, once the Scheduling Order deadline has passed, one must show good cause under Rule 16(b) for failure to seek leave to amend earlier before considering whether amendment is proper under Rule 15(a). *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003). In *Leary*, the Sixth Circuit provided an analysis of Rule 16 and stated:

> More than twenty years after the Court's decision in *Foman*, the 1983 amendments to the Federal Rules of Civil Procedure altered Rule 16 to contain a provision restricting the timing of amendments. Fed. R. Civ. P. 16, 1983 advisory committee's notes. Rule 16 states, in relevant part: "the district judge . . . shall, after receiving the report from the parties under Rule 26(f) . . . enter a scheduling order that limits the time (1) to join other parties and to amend the pleadings. . . ." Fed. R. Civ. P. 16(b). The Rule is designed to ensure that "at some point both the parties and the pleadings will be fixed." Fed. R. Civ. P. 16, 1983 advisory committee's notes. The Rule permits modification to the scheduling order "upon a showing of good cause and by leave of the district judge." Fed. R. Civ. P. 16(b). *Leary* at 905-906.

Finally, the Sixth Circuit noted, a Court choosing to modify the schedule upon a showing of good cause, may do so only **"if it cannot reasonably be met despite the diligence of the party seeking the extension."** Fed. R. Civ. P. 16, 1983 advisory committee's notes; *Leary* at 906 (emphasis added).

Here, Defendant filed this Motion 109 days after the deadline imposed by this Court; yet Defendant did not address the Court's Order (**Ex. A**), Fed. R. Civ. P.

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

16(b), or the requirement to show "good cause" for why they should be allowed to file an Amended Answer. Instead, Defendant relied upon outdated case law and in doing so, has failed to support its request to file an Amended Answer. Therefore, Defendant's Motion must be denied as it is in direct violation of the Court's Order and Rule 16.

Finally, Defendant also failed to provide any reason or excuse for the 4-month delay in requesting to file an Amended Answer. Defendant is requesting that it be allowed to file an Amended Answer, which attaches an Affidavit signed by Mr. Isaac Lefkowitz, who is a "Director of Corizon Healthcare, Inc.". (**See Defendant's Exhibit 1**) Defendant was served with Plaintiff's Complaint on June 17, 2022. However, it took Mr. Lefkowitz, 6 months to sign the Affidavit (Dated 12/13/2022), which is now attached to Defendant's proposed Amended Answer. In its Motion, Defendant did not offer any excuse or reason for this 6-month delay in obtaining an affidavit from its own employee. Nor did Defendant describe any "diligent efforts" to obtain this affidavit in a timely fashion.

Instead, Defendant did not even acknowledge the Court's Order or Rule 16(b) in its Motion, which is likely because Defendant has no reason or excuse for the delay. Therefore, Plaintiff respectfully requests that this Honorable Court deny Defendant's Motion to Amend its Answer.

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

## II. Defendant's Motion fails to provide a valid reason to allow an amended pleading when analyzed under Rule 15.

As is discussed above, the Court need not consider the Rule 15 analysis outlined in Defendant's Brief and the *Foman* case as Defendant failed to provide "good cause", which is required by both Rule 16 and the Court's Scheduling Order. However, in the event that the Court does consider, Defendant's argument, this argument still fails.

Defendant argues that it is entitled to leave to amend its Answer under Rule 15(a)(2) and cites *Foman v Davis*, which states:

> In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given." 371 U.S. 178,  182, 83 S. Ct. 227 (1962).

Defendant relies upon this standard and specifically compares the facts of the current case to those in *Mersen USA–Midland-MI Inc. v. Graphite Machining Services*, 2012 WL 3060922 at *1 (E.D. Mich. July 26, 2012). In *Mersen*, the Court did allow an amendment of an Answer to include an Affidavit; however, the current case does not have "identical procedural circumstances" as Defendant contends.

First, the Court did issue a Scheduling Order (**Exhibit B**) in *Mersen*; however, this Order did not set forth a timeline for amendment of pleadings as is the case in

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
One Woodward Avenue,
Suite 2400
Detroit, Michigan
48226-5485

(313) 965-7900

the present case. Second, and importantly, the Motion for Summary Judgment in *Mersen* was filed one month after the filing of the Answer and 6 days after the Court issued a Scheduling Order. (**Exhibit C- Register of Actions**) Finally, the Affidavit in *Mersen* outlined the defendant's issues relating to defective products, discussed specific amounts that were disputed, and contained over 150 pages of exhibits, which provided evidence of the dispute. (**Exhibit D**). In the current case, Defendant's proposed affidavit does not outline specific evidence to dispute Plaintiff's claims, but instead states that Defendant needs to perform audits to review these claims. (**See Defendant's Exhibit 1**) Not only were audits already performed at Defendant's request and provided to Defendant, but the need to audit claims is not a specific defense. This is simply a delay tactic that Defendant is using as a substitute for providing actual evidence to dispute Plaintiff's claims. In short, the facts of this case are nothing like *Mersen* and Defendant's Motion should be denied because Defendant's actions constitute undue delay, bad faith, and the proposed amendment would be futile.

### A. Defendant waited 6 months to provide an affidavit, which claims the need to perform an audit. Not only is this undue delay, but it a prime example of bad faith as these audits were already performed and provided to Defendant.

Defendant filed its Motion to Amend on December 20, 2022 (corrected on December 28, 2022). Defendant is requesting that it be allowed to file an Amended

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
One Woodward Avenue,
Suite 2400
Detroit, Michigan
48226-5485

(313) 965-7900

13

Answer, which attaches an Affidavit signed by Mr. Isaac Lefkowitz, who is a "Director of Corizon Healthcare, Inc.". (**See Defendant's Exhibit 1**) Defendant was served with Plaintiff's Complaint on June 17, 2022. However, it apparently took Mr. Lefkowitz, 6 months to sign this Affidavit (Dated 12/13/2022), which is now attached to Defendant's proposed Amended Answer. The main contention in this Affidavit is that Defendant needs to perform audits of the invoices that form the basis of Plaintiff's claims.

Not only is Defendant's request for leave to amend untimely, but the request for an audit is also untimely and completely contradictory to the contract provisions, which govern audits and disputed claims. The Contract provides that Defendant shall notify Plaintiff of any disputed claims within "60 days of access to a paid claims listing". (**Exhibit E at p. 3**) Defendant did not follow this process and did not dispute any of the invoices at issue. Even after reviewing the proposed Affidavit, it is still not clear what Defendant is even disputing in this case.

Furthermore, the Contract has a detailed process for auditing the claims processed by Plaintiff. (**Ex. E at p. 5**) Defendant requested yearly audits and Plaintiff complied with these requests. A total of 4 audits were performed and all information was provided to Defendant after each audit. The final audit covered July of 2020 through September of 2021, which is the period that Mr. Lefkowitz claims needs to be audited. Ironically, all prior audits were requested by Defendant and Defendant

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

has previously signed off on all of this information when it was provided to Defendant.

Any additional audit of this period would be done in violation of the Contract, which states, "audits shall not occur more frequently than once every twelve months and shall not include claims from previously audited periods". (**Ex. E at p. 5**) This language is clear and unambiguous and no further audits are allowed under the Contract.

Furthermore, the issue surrounding the need for audits is a completely new issue raised by Defendant. Prior to litigation, Plaintiff sent demand letters to Defendant and made several attempts to resolve the balance. Throughout these attempts, Defendant never mentioned a need for an additional audit. In fact, Defendant simply ignored these demands and did not dispute the amount owed.

After many attempts to resolve this balance, Plaintiff was left with no choice but to file the current lawsuit. This was filed in May of 2022 in Macomb County Circuit Court. Defendant removed and answered in July of 2022. Defendant raised very generic affirmative defenses, but there was once again, no mention of a need to perform additional audits.

Then, on August 11, 2022, the Parties submitted a Joint Proposed Rule 26(f) Discovery Plan. (**Exhibit F**) Not only did Defendant fail to mention any alleged need

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

for audits in this Discovery Plan, but Defendant also stated, "Corizon does not anticipate amending its pleadings at this time". (**Ex. F at p. 4**)

On August 18, 2022, The Court held a Telephonic Scheduling Conference. Defendant's Attorney appeared and informed the Court that he knew his client had an issue with some of Plaintiff's claims, but he would provide Plaintiff with this information so that the two sides could try to work this out. There was once again no mention of the need for alleged audits. Following this Conference, the Court ordered the Parties to participate in Facilitation.

On August 19, 2022, this Court issued a Case Management and Scheduling Order pursuant to Rule 16(b) of the Federal Rules of Civil Procedure. (**Ex. A**) Pursuant to this Order, the Parties submitted Initial Disclosures. Upon review of Defendant's Initial Disclosures, there is no mention of a need to perform an audit. (**Exhibit G**)

Prior to the November 15th Facilitation, Plaintiff reached out to Defendant to try and obtain a list of the claims or invoices that Defendant alleged it had an issue with; however, this information was not provided and has not been provided to date. In fact, this information is not even discussed in Mr. Lefkowitz's Affidavit. For that reason, the Facilitation went nowhere and Defendant, for the first time, cited a need to perform additional audits, but did not give a reason for this alleged need.

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
One Woodward Avenue,
Suite 2400
Detroit, Michigan
48226-5485

(313) 965-7900

16

It became clear that Defendant had no actual intention of working with Plaintiff and Plaintiff filed a Motion for Summary Judgment. Plaintiff argued that Defendant has failed to provide any actual evidence to support its defenses. After 6 months and the filing of a Motion, Defendant is now attempting to amend its' Complaint and provide an Affidavit which claims it needs to perform audits of Plaintiff's claims. This is a clear attempt to prolong this lawsuit while Defendant goes through non-judicial bankruptcy proceedings. Defendant has failed to abide by the timing requirements of the Contract, just as it has ignored the timing requirements of MCL 600.2145 and of those set forth in this Court's Case Management and Scheduling Order. In other words, Defendant's actions not only constitute an undue and intentional delay, but also show bad faith and dilatory motives.

Finally, Corizon Healthcare, Inc. has recently become a part of YesCare (**Exhibit H**). Therefore, it is Plaintiff's belief that Defendant is attempting to raise the issue of audits in order to drag out this lawsuit, while Defendant undertakes steps towards a non-judicial bankruptcy. This is further evidenced by the fact that the audits that Defendant is just now requesting, were already performed and provided pursuant to the Contract. As is outlined above, Plaintiff fully complied with the Contract and performed the audits that Defendant requested each year of the Contract. Furthermore, the time for any additional audits has passed and Defendant

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
One Woodward Avenue,
Suite 2400
Detroit, Michigan
48226-5485

(313) 965-7900

has no contractual ability to obtain additional audits. When looking at all of the facts of this case, it is clear that Defendant is simply raising the audit issue as a means to distract from the fact that it has no actual defense to Plaintiff's claims. This is a prime example of undue delay, bad faith, and dilatory motives. Therefore, Plaintiff respectfully requests that this Honorable Court deny Defendant's Motion to Amend its Answer.

### B. Defendant's proposed Amendment would be futile as the Affidavit of Mr. Lefkowitz does not provide any actual defenses to Plaintiff's claims.

If the Court is persuaded that Defendant has shown good cause, has not acted in bad faith, and has not acted with undue delay, this Motion should still be denied as the attached Affidavit is futile. Even if this Affidavit is accepted, Defendant still has failed to provide any actual defenses or evidence to support a defense to Plaintiff's claims. Therefore, pursuant to Defendant's own analysis, this Motion should be denied as amending its Answer would be futile.

Upon review of Mr. Lefkowitz's untimely Affidavit, it is clear that this Affidavit was made in direct response to Defendant's Motion for Summary Judgment. (**Defendant's Ex. 1**) Mr. Lefkowitz mentions the November 15th Facilitation and claims that Defendant, all of a sudden, needs to perform audits of these invoices. (**Def. Ex. 1 at ¶ 3-6**) This Affidavit does not raise any actual defenses to Plaintiff's claims. Mr. Lefkowitz does not describe some billing error or actual

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-6485

(313) 965-7900

18

issue with Plaintiff's claims, but instead is attempting to prolong litigation by claiming that Defendant, needs more time to analyze Plaintiff's claims. This is not an actual defense nor is it evidence to support a defense. Therefore, even if this Affidavit is allowed, Defendant still has no evidence or defense to deny Plaintiff's Account Stated claim.

Defendant cites to *Mersen* and attempts to compare the two cases in an effort to support its request for leave to amend. However, when looking at the facts of *Mersen*, these two cases are nothing alike. Outside of the significant difference in timing, the proposed affidavits in the two cases, are also incredibly different. The Affidavit in *Mersen* outlined the defendant's issues relating to defective products, discussed specific amounts that were disputed, and contained over 150 pages of exhibits, which provided evidence of the dispute. (**Exhibit D**). In the current case, Defendant's proposed affidavit does not outline specific evidence to dispute Plaintiff's claims, but instead simply states that Defendant needs to perform audits to review all claims. (**See Defendant's Exhibit 1**)

In *Mersen*, the Court allowed the affidavit because of the immense impact it had on the case. Here, Defendant's Affidavit has no impact on this case and the amendment is entirely futile. Not only were audits already performed at Defendant's request and provided to Defendant, but the need to audit claims is not a specific defense. This is simply a delay tactic that Defendant is using as a substitute for

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
One Woodward Avenue,
Suite 2400
Detroit, Michigan
48226-5485

(313) 965-7900

providing actual evidence to dispute Plaintiff's claims. The facts of this case are nothing like *Mersen* and Defendant's Motion should be denied because Defendant's actions constitute undue delay, bad faith, and the proposed amendment would be futile.

In short, even if Mr. Lefkowitz's Affidavit is accepted, it still fails to raise a valid defense or provide any evidence to dispute the amount owed to Plaintiff. Defendant waited 6 months to provide any information relating to the alleged dispute and now Defendant's only claim is its supposed need for an audit, which would be in direct violation of the Contract. This is not a defense nor is it any actual evidence of a purported defense. This is a stall tactic to delay this lawsuit, while Defendant undertakes steps towards a non-judicial bankruptcy. For that reason, this request to amend is futile and Defendant's Motion should be denied.

WHEREFORE, Plaintiff, Blue Cross Blue Shield of Michigan respectfully requests that this Honorable Court deny Defendant's Motion to Amend its Answer.

Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
One Woodward Avenue,
Suite 2400
Detroit, Michigan
48226-5485

(313) 965-7900

20

Respectfully submitted,

KITCH DRUTCHAS WAGNER
VALITUTTI & SHERBROOK

/s/ *Gabe Sybesma*

By:_____

Gabe Sybesma (P66632)
Paul Wilk Jr (P83691)
Attorneys for Plaintiff
One Woodward Avenue, Suite 2400
Detroit, MI 48226-5485
(313) 965-7848

Dated: January 3, 2023

## DECLARATION OF SERVICE

The undersigned certifies that on January 3, 2023 a copy of Plaintiff's Response to Defendant's Motion to Amend was served upon all attorneys/parties to the above cause by electronic filing with the Clerk of the Court using the E-File and E-Serve System which will send notification of such filing to the foregoing.

I declare under the penalty of perjury that the statement above is true to the best of my information knowledge and belief.

/s/ *Paul Wilk Jr*_____
Paul Wilk Jr

**Kitch Drutchas
Wagner Valitutti &
Sherbrook**
ATTORNEYS AND
COUNSELORS
**One Woodward Avenue,
Suite 2400
Detroit, Michigan**
48226-5485

(313) 965-7900

21

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

BLUE CROSS BLUE SHIELD OF
MICHIGAN,

       Plaintiff,

v

CORIZON HEALTH
INCORPORATED,

       Defendant.

Case No. 22-cv-11598

Hon. Mark A Goldsmith

_____/

Gabe Sybesma (P66632)
Paul Wilk Jr (P83691)
Attorneys for Plaintiff
One Woodward Avenue, Suite 2400
Detroit, MI 48226-5485
(313) 965-7848
gabe.sybesma@kitch.com
paul.wilk@kitch.com

Phillip C Korovesis (P40579)
Attorney for Defendant
150 W Jefferson, Suite 200
Detroit, MI 48226
(313) 225-7000
korvesis@butzel.com

_____/

## **PLAINTIFF'S APPENDIX**

    Kitch Drutchas Wagner Valitutti & Sherbrook
    Gabe Sybesma (P66632)
    Paul Wilk Jr (P83691)
    Attorneys for Plaintiff
    One Woodward Avenue, Suite 2400
    Detroit, MI 48226-5485

**Kitch Drutchas
Wagner Valitutti &
Sherbrook**
ATTORNEYS AND
COUNSELORS
One Woodward Avenue,
Suite 2400
Detroit, Michigan
48226-5485

(313) 965-7900

22

## <u>TABLE OF CONTENTS</u>

**EXHIBIT A-** Case Management and Scheduling Order

**EXHIBIT B-** *Mersen* Scheduling Order

**EXHIBIT C-** *Mersen* Register of Actions

**EXHIBIT D-** *Mersen* Affidavit

**EXHIBIT E-** Administrative Services Contract

**EXHIBIT F-** Joint Proposed Discovery Plan

**EXHIBIT G-** Corizon's Initial Disclosures

**EXHIBIT H-** YesCare and Corizon Disclaimer

**Kitch Drutchas**
**Wagner Valitutti &**
**Sherbrook**
ATTORNEYS AND
COUNSELORS
ONE WOODWARD AVENUE,
SUITE 2400
DETROIT, MICHIGAN
48226-5485

(313) 965-7900

23

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BLUE CROSS BLUE SHIELD
OF MICHIGAN,

        Plaintiff(s),

v.

CORIZON HEALTH, INC.,

        Defendant(s).

_____/

Civil Action No.
22-CV-11598

HON. MARK A. GOLDSMITH

## CASE MANAGEMENT AND SCHEDULING ORDER

| EVENT | DEADLINE |
|---|---|
| Initial Disclosures under Fed. R. Civ. P. 26(a)(1) | **September 15, 2022** |
| Facilitation completed by | **December 19, 2022** |
| Lay Witness List | **January 19, 2023** |
| Exhibit List | **January 19, 2023** |
| Expert Witness List/Disclosures/Report - Plaintiff | **January 26, 2023** |
| Expert Witness List/Disclosures/Report - Defendant | **February 16, 2023** |
| Fact Discovery | **March 2, 2023** |
| Expert Discovery | **March 2, 2023** |
| Dispositive Motions & Motions to Limit/Exclude Expert Testimony | **March 16, 2023** |
| All Other Motions, Including Motions in Limine | **June 19, 2023** |
| Final Settlement Conference | **To be scheduled by the Magistrate Judge at least 30-days before the deadline for the Joint Final Pretrial Order.** |
| Joint Final Pretrial Order | **June 19, 2023** |
| Final Pretrial Conference | **August 7, 2023 at 3:30 p.m.** |
| Trial - Bench | **August 21, 2023** |

## I.    DISCOVERY

    A.    Disclosure required by Fed. R. Civ. P. 26(a)(1)(A), (B) and (C) shall be served on opposing counsel, but not filed with the Court, on or before the date specified on page 1.

B.    Counsel shall serve upon opposing counsel, and file with the Court in the form required by Fed. R. Civ. P. 26(a)(3), a list of witnesses, separately identifying those whom a party expects to present at trial and those it may call if the need arises.  Lay witness lists are due on or before the date specified on page 1.  Expert witness lists are due from each party on the respective due dates for expert witness disclosures. As used in this Order, the term "expert" includes any witness offering testimony under Federal Rule of Evidence 702, 703, or 705. This includes experts specially retained for purposes of litigation, as well as non-retained witnesses offering expert testimony, such as treating physicians. Generic categories of witnesses are not permitted.

C.    Plaintiff's counsel shall serve upon opposing counsel, but not file with the Court, on or before the date specified on page 1, the expert witness disclosures and any report required by Fed. R. Civ. P. 26(a)(2). Plaintiff's expert(s) must be available and prepared for deposition within 14 days after the expert witness disclosures and report are served.  Defendant's counsel shall serve upon opposing counsel, but not file with the Court, on or before the date specified on page 1, the expert witness disclosures and any report required by Fed. R. Civ. P. 26(a)(2).  Defendant's expert(s) must be available and prepared for deposition within 14 days after Defendant's expert witness disclosures and report are served.

D.    Counsel shall serve upon opposing counsel, and file with the Court, on or before the date specified on page 1, a list of exhibits, separately identifying those that it expects to offer at trial and those that it may offer if the need arises. By the same date, counsel shall exchange the exhibits reflected on the list.

E.    Fact and expert discovery shall be completed on or before the date(s) specified on page 1.  Discovery must be served sufficiently in advance of the deadline so as to allow the opposing party sufficient time to respond under the Federal Rules of Civil Procedure prior to the discovery cutoff. The Court will not order discovery to take place after the discovery cutoff date, absent good cause.  **Any motion to compel discovery must be filed promptly after the grounds for the motion become apparent and reasonable efforts to resolve the dispute have been exhausted**.

F.    A proposed protective order containing provisions for the sealing of documents or other matter must contain the language set forth in paragraph 1 below; a motion to seal must comply with paragraph 2 below:

    1.    This order does not authorize the filing of any documents or other matter under seal.  Documents or other matter may be sealed only if authorized by statute, rule, or order of the Court.  A party seeking to file such items under seal shall file and serve a motion or submit a proposed stipulated order that sets forth (i) the authority for sealing; (ii) an identification and description of each item proposed for sealing; (iii) the reason that sealing each item is

2

necessary; (iv) the reason that means other than sealing are not available or unsatisfactory to preserve the interest advanced by the movant in support of sealing; (v) a memorandum of legal authority supporting sealing. See Local Rule 5.3. A party shall not file or otherwise tender to the Clerk any item proposed for sealing unless the Court has granted the motion or entered the proposed stipulated order required by this section.

2. Whenever a motion to seal is filed, the movant shall comply with the requirements of Local Rule 5.3 set forth above and submit a proposed order which states the particular reason that sealing is required. The proposed order shall be submitted to the undersigned district judge or to the magistrate judge to whom the matter is referred, via the link located under the "Utilities" section of CM/ECF. If a motion to seal is granted, the documents to be filed under seal shall be filed electronically by the movant with an appropriate designation that the documents are to be held under seal.

## II.    MOTION PRACTICE

### A.    Due Dates

1. Unless a different date is specified on page 1, parties may not be added or pleadings amended more than 14 days after issuance of this Order, absent a showing of good cause.

2. Dispositive motions and motions to limit or exclude expert testimony must be served and filed on or before the date specified on page 1.

3. All other pretrial motions, including motions in limine and motions to purge depositions, must be served and filed on or before the date specified on page 1, unless applicable legal authority requires that the motion be filed earlier. **Any objection to proposed testimony or exhibits must be made the subject of a timely motion in accordance with other provisions of this Order, such as IIA.2 and IV.B.6, unless good cause exists to excuse untimeliness**. **Only one motion in limine may be filed (not to exceed 25 pages), absent leave of court.**

### B.    Requirements Applicable to All Motions

1. The Court requires strict compliance with E.D. Mich. LR 7.1(a), which obligates moving parties to seek concurrence before filing any motion. A moving party must certify compliance with this obligation by setting forth in the first paragraph of every motion one of the following statements or one substantially similar:

    (a)    The undersigned counsel certifies that counsel personally spoke to, or met with, opposing counsel, explaining the nature of the relief to

be sought by way of this motion and seeking concurrence in the relief; opposing counsel expressly denied concurrence.

(b) The undersigned counsel certifies that counsel communicated <u>in writing</u> with opposing counsel, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief; opposing counsel thereafter expressly denied concurrence.

(c) The undersigned counsel certifies that counsel communicated <u>in writing</u> with opposing counsel, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief, and <u>three business days</u> have lapsed without opposing counsel expressly agreeing to the relief, orally or in writing.

(d) The undersigned counsel certifies that counsel made no attempt or a limited attempt to seek concurrence in the relief requested by this motion because of the following exceptional circumstances. [Set forth the exceptional circumstances with specificity.]

The above statements shall be modified appropriately where one or more parties is unrepresented. **<u>The failure to certify compliance with this paragraph will result in the motion being struck.</u>**

2. The Court follows the local rules in only permitting one response and one reply to a motion, absent leave of the Court. Parties are not permitted to file sur-replies, supplemental briefs, notices, and/or additional documents in response to a motion without leave of the Court. Filed documents other than those permitted by the local rules and/or an order of the Court will be stricken.

3. Responses/replies to motions and supporting briefs must be filed according to the schedule set forth in E.D. Mich. LR 7.1(e), unless the Court orders otherwise. Note that Rule R5(e) of the Electronic Filing Policies and Procedures prohibits combining a response/reply to a motion with a counter-motion in the same filing. The Court typically does not issue a briefing schedule. The Court enforces the response and reply due dates set forth in E.D. Mich. LR 7.1(e) and Fed. R. Civ. P. 6, even when the motion hearing is set far in advance**. <u>Untimely submissions may result in sanctions, including, but not limited to, the striking of the submission, forfeiture of oral argument, and/or costs and attorney fees.</u>**

4. Facts stated in the statement of facts must be supported with citations to the pleadings, interrogatories, admissions, depositions, affidavits, or documentary exhibits.

5.   All materials submitted in support of, or opposing, a motion shall be contained in an appendix. The appendix shall also include the full text of any unpublished authority cited, unless the source is available electronically on Westlaw. The appendix shall contain a table of contents/index. Each exhibit shall be tabbed with the relevant portion(s) highlighted. When submitting transcripts, counsel shall supply the Court with cited page(s) together with sufficient accompanying pages to provide context. All citations must have page references.

6.   The parties shall not submit courtesy copies to the Court unless specifically requested.

7.   If the Court deems a hearing necessary, a notice of hearing will issue with the specific date and time.

**C.   Dispositive Motions**

1.   No party may file more than one motion for summary judgment without obtaining leave of Court. Challenges to several counts of a complaint shall be brought in a single motion.

2.   **A brief in support of a Rule 56 motion must begin with a "Statement of Material Facts." The Statement is to be included as the first section of the brief in support of the Rule 56 motion. The Statement must consist of numbered paragraphs describing the facts as to which the moving party contends there is no genuine issue and that entitle the moving party to judgment as a matter of law. Each paragraph must include specific references and citations to record evidence.**

3.   **A brief in support of a response to a Rule 56 motion must begin with a "Counter-statement of Material Facts," stating which facts are admitted and which are contested. The paragraph numbering must correspond to the moving party's Statement of Material Facts. If any of the moving party's proffered facts are contested, the non-moving party must explain the basis for the factual disagreement, referencing and citing record evidence. The non-moving party may raise additional material facts not implicated by the moving party's Statement under the separate heading "Statement of Additional Material Facts." The Statement of Additional Material Facts must consist of numbered paragraphs, and each paragraph must include specific references and citations to record evidence.**

4.   If the non-moving party raises additional material facts not addressed in the moving party's Statement, the moving party must begin its reply brief with a "Reply to Counter-statement of Material Facts," stating which of the non-moving party's additional facts are contested. The paragraph numbering

must correspond to the non-moving party's Statement of Additional Material Facts. If any of the non-moving party's proffered additional facts are contested, the moving party must explain the basis for the factual disagreement, referencing and citing record evidence.

5.    Other than the parties' respective statements of undisputed facts, the parties are not required to set forth any additional recitation of facts but may do so if they wish.

6.    Statements of Material Facts, Counter-statements of Material Facts, Statements of Additional Material Facts, and Replies to Counter-statements of Material Facts all count toward the page limit.

## III.    ALTERNATIVE DISPUTE RESOLUTION

A.    The Court may order an early settlement conference and/or a final settlement conference, either conducted by the Court or by another judicial officer. Alternatively, the Court may order facilitation before a person other than a judicial officer. If an early and/or final settlement conference is to be conducted by the Court, the date(s) and time(s) are specified on page 1. If an early and/or final settlement conference is to be conducted by another judicial officer, that fact is referenced on page 1, and notice of the date and time for such conference will be furnished later. If the Court refers this matter to facilitation, it will issue a separate order.

B.    The following person(s) and entities must personally attend the settlement conference, regardless of which judicial officer conducts the conference: (i) trial counsel for each party; (ii) all parties who are natural persons; (iii) a representative, with full and final settlement authority, on behalf of any party that is not a natural person; (iv) a representative, with full and final settlement authority, on behalf of any insurance carrier that has undertaken the prosecution or defense of the case and has contractually reserved to itself the right to settle the action; and (v) a representative authorized to act on behalf of each party that is a governmental entity.

C.    The Court's mandatory personal attendance policy is not satisfied by trial counsel professing to have full and final settlement authority on behalf of his or her client or a party being available by telephone.

D.    If the early settlement conference is to be conducted by the Court, the Court will issue a separate order regarding the requirements for the early settlement conference, including the submission of settlement conference statements.

E.    If the parties elect to submit the case to case evaluation pursuant to E.D. Mich. LR 16.3, they must complete the Court's form order of reference to case evaluation, which is located in the "Form Orders" section of the Court's practice guidelines.

The order must be submitted to chambers through the document utilities feature of CM/ECF. Case evaluation, including any accept or reject period, must be completed at least seven days prior to the Court's scheduled Final Pretrial Conference.

## IV. FINAL PRETRIAL CONFERENCE AND JOINT FINAL PRETRIAL ORDER

A. The final pretrial conference shall take place on the date and time specified above. The proposed joint final pretrial order (JFPO) must be submitted to chambers in hard copy and through the document utilities feature of CM/ECF on the date specified above.

B. In lieu of the requirements set out in E.D. Mich. LR 16.2(b), the Court imposes the following requirements:

1. The proposed JFPO shall not be a vehicle for adding claims or defenses.

2. Counsel for all parties are directed to confer in person or by video conference sufficiently in advance of the scheduled conference date in order to reach any possible stipulations narrowing the issues of law and fact and to discuss non-stipulated issues. It shall be the duty of Plaintiff's counsel to initiate that meeting and the duty of opposing counsel to respond to Plaintiff's counsel and to offer full cooperation and assistance. If, after reasonable effort, any party cannot obtain the cooperation of opposing counsel, it shall be counsel's duty to communicate with the Court.

3. Plaintiff's counsel is responsible for submitting the proposed JFPO to chambers after receiving proposed language from opposing counsel and reconciling the parties' respective positions.

4. If there are any pending motions requiring determination in advance of trial, they should be called to the Court's attention not later than the date of submission of the proposed JFPO.

5. The proposed JFPO must provide for the signature of the Court, which, when signed, will become the order of the Court.

6. The proposed JFPO shall contain the following:
   (a) <u>Jurisdiction</u>: The parties shall state the basis for federal court jurisdiction and whether jurisdiction is contested by any party.

   (b) <u>Trial</u>: The parties shall state whether the case will be tried to a jury or to the Court, and the estimated length of trial in terms of number of full days of trial.

(c)    **Statement of Claims and Defenses: Each claim for affirmative relief (by Plaintiff or Counter-plaintiff) must be separately stated. As to each claim, the proposed JFPO must state: (i) the elements of the claim; (ii) the principal facts in support of the claim, both as to liability and damages, indicating whether each fact is contested or uncontested; (iii) the controlling or most appropriate legal authority in support of every element of the claim; (iv) the elements of every defense to the claim; (v) the principal facts in support of the defense, both as to liability and damages, indicating whether each fact is contested or uncontested; (vi) the controlling or most appropriate legal authority in support of every element of the defense; and (vii) each party's calculation of damages.**

(d)    <u>Lay Witnesses</u>: The parties shall set forth the name of every lay witness whom each party will call or may call to testify, including rebuttal witnesses unless the rebuttal witnesses' testimony could not be reasonably anticipated before trial. Generic categories of witnesses are not permitted. **The subject matter of every witness' testimony shall be set forth with particularity, indicating the specific factual issues about which the witness will testify.**

(e)    <u>Expert Witnesses</u>: The parties shall set forth the name and area of expertise of every expert witness whom each party will call or may call to testify, including rebuttal expert witnesses unless the rebuttal witnesses' testimony could not be reasonably anticipated before trial. **In addition, the expert's opinions must be set forth with particularity.**

(f)    <u>All Witnesses</u>: Except as permitted by the Court for good cause, a party may not list a witness in the proposed JFPO unless the witness was included on a timely filed witness list. Only witnesses listed in the proposed JFPO will be permitted to testify at trial, except for rebuttal witnesses whose testimony could not be reasonably anticipated before trial, or except for good cause shown.

(g)    <u>Depositions</u>: All de bene esse depositions to be used at trial shall be listed. Unless a prior order sets an earlier date, all such depositions, both as to lay and expert witnesses, must be concluded no later than eight weeks before the final pretrial conference. A party who intends to present at trial a de bene esse deposition must provide to the opposing party a copy of the deposition, indicating the specific pages and lines to be presented, no later than seven weeks before the final pretrial conference. The parties shall confer as to any objections. If not resolved, objections must be set forth in a motion filed not later than six weeks before the final pretrial conference,

8

which motion shall be allowed in addition to the one motion in limine permitted each party. Any such motion and response may not exceed 15 pages. No such motion may be used to raise an issue regarding expert testimony that should have been the subject of an earlier and timely motion to limit or exclude expert testimony. The proposed JFPO must indicate whether any motion regarding objections to depositions is pending. Any objection to a de bene esse deposition not made the subject of a timely motion shall be deemed waived.

(h)   <u>Exhibits</u>:

     a.   All proposed exhibits must be exchanged by the parties no later than seven weeks before the final pretrial conference. The parties shall confer as to any objections. If not resolved, objections must be set forth in a motion filed not later than six weeks before the final pretrial conference, which motion shall be allowed in addition to the one motion in limine permitted each party. Any such motion and response may not exceed 15 pages. The motion must attach the proposed exhibits to which objections are made. The proposed JFPO must indicate whether any such motion is pending. Any objection to a proposed exhibit not made the subject of a timely motion shall be deemed waived.

     b.   The parties shall include in the proposed JFPO a list of all exhibits that each party will or may offer in evidence using a numbering and/or lettering system that will allow identification of the offering party. The list must set forth the exhibit number or letter, date, description of document, and whether it is subject to an objection set forth in a timely filed motion. Absent good cause, only those exhibits that have been listed on an exhibit list previously filed and in the proposed JFPO may be offered into evidence, except for rebuttal exhibits that could not be reasonably anticipated before trial.

     c.   A separate binder containing each party's full set of proposed exhibits, displaying exhibit numbers or letters, must be submitted to the Court by each party at least two business days before the first day of trial. The outside cover and spine of each binder must identify the case, case number, and party offering the exhibits. Counsel are required to keep track and maintain custody of all admitted exhibits during trial. The parties must also submit with the binders exhibit lists, identifying separately each party's exhibits, and setting forth the exhibit number or letter, date, description of

document, a one-half inch column marked "Admitted?" and a two-inch column marked "Notes."

(i)    <u>Evidentiary Issues</u>: The parties shall identify any evidentiary issues likely to arise at trial that are not the subject of a pending motion or identified in the preceding paragraph. The parties shall also set forth the claimed good cause for why these evidentiary issues were not the subject of a timely motion.

7.    Other items to be submitted at the same time as the proposed JFPO:

(a)    <u>Jury Instructions/Verdict Form</u>: At the time the proposed JFPO is submitted to chambers, the parties shall file on the docket a joint set of agreed instructions. They shall also file a joint document regarding instructions as to which there is no stipulation. The latter document must contain a certification by counsel for each party that a concerted, good faith effort was undertaken to narrow the areas of dispute and attempt to reach agreement. It shall contain a separate section for disputed instructions proposed by each party (which instructions shall be attached as exhibits). As to each instruction, there shall be a statement by each party, not exceeding two pages, setting forth that party's arguments and authorities in support of, or in opposition to, the instruction. The parties shall also file a proposed stipulated verdict form if stipulation can be reached; if not, the same procedures set forth above for disputed jury instructions shall apply to any disputes regarding the verdict form. The instructions and verdict form shall also be submitted to chambers in hard copy and through the document utilities feature in CM/ECF in Word format.

(b)    <u>Statement of Claims and Defenses to be Read to Jury</u>: Counsel shall submit a stipulated statement that the Court may utilize in explaining the general nature of the case to potential jurors during voir dire. The statement must be entirely neutral and may not exceed 100 words.

(c)    <u>Voir Dire</u>: A list of agreed-upon and disputed voir dire questions must be jointly submitted to chambers in hard copy and through the document utilities feature in CM/ECF For each disputed voir dire question, the parties shall set forth their respective arguments/authority against/in favor of the question.

8.    For failure to cooperate in preparing or submitting the joint final pretrial order or failure to comply strictly with the terms of the joint final pretrial order, the Court may dismiss claims, enter default judgment, refuse to permit witnesses to testify or to admit exhibits, assess costs and expenses, including attorney fees, or impose other appropriate sanctions.

## V.    TRIAL

A.    Trial shall commence on the date and time specified on page 1.

B.    The Court will provide the customary opening instructions. Counsel are responsible for all other instructions, including those related to their specific claims or defenses in the case.

C.    Trial briefs are optional, but any such brief must be filed at least seven days before trial.

D.    Parties are encouraged to use electronic aids to display evidence at trial. However, a party intending to do so must disclose that intention to the Court and all other parties at or before the final pretrial conference. Parties are responsible for providing equipment for such purpose.

E.    If counsel wishes to publish an exhibit (or any portion thereof) to the jury, counsel must provide enough copies for every juror. Counsel must also submit a complete set of admitted exhibits to the Court before jury deliberations.

F.    It is the responsibility of the parties to ensure that the record is complete. At the conclusion of trial, all trial exhibits, briefs, proposed jury instructions, etc. are to be filed in accordance with Rule R18 of the Electronic Filing Policies and Procedures.

## VI.  MODIFICATION

This Order may be modified only by order of the Court. The Court's policy is that adjournment of any event scheduled to occur prior to the due date for dispositive and expert-related motions may be accomplished by submission of a proposed stipulated order, provided that no such adjournment may affect the due date of any event scheduled to occur from and after the due date for dispositive and expert-related motions. Adjournment of any event scheduled to occur from and after the dispositive and expert-related motion due date must be sought by written motion setting forth good cause and filed promptly after the circumstance giving rise to the claimed need for an adjournment, provided that such a request may be made via email to the Court's case manager (copied to opposing counsel) without a written motion, if the request is made within one week of the issuance of this Order.

SO ORDERED.

Dated:  August 19, 2022                         s/Mark A. Goldsmith_____
Detroit, Michigan                               MARK A. GOLDSMITH
                                                United States District Judge

# EXHIBIT B

(Rev 5/3/2010)

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### NORTHERN DIVISION

MERSEN USA - MIDLAND-MI INC.,

      Plaintiff,

v.                                   Case Number 12-10961-BC

GRAPHITE MACHINING SERVICES         Honorable Thomas L. Ludington
& INNOVATIONS, LLC, f/k/a GRAPHITE
MACHINING SERVICES, INC.,

      Defendant.

_____/

# CASE MANAGEMENT AND SCHEDULING ORDER

---

**YOU WILL RECEIVE NO FURTHER NOTICE OF THESE DATES**

| | |
|---|---|
| Initial Disclosures Exchanged By: | April 20, 2012 |
| Expert Disclosure, plaintiff: | August 3, 2012 |
| Expert Disclosure, defendant: | September 4, 2012 |
| Pretrial Disclosures: | February 28, 2013 |
| Discovery Cutoff: | October 31, 2012 |
| Settlement Conference: | October 10, 2012 at 4:00 p.m. |
| Motions Challenging Experts Filed By: | November 30, 2012 |
| Dispositive Motions Filed By: | November 30, 2012 |
| Motions *in limine* Filed By: | March 19, 2013 |
| Stipulation for Case Evaluation Submitted By: | September 14, 2012 |
| Final Pretrial Order & Jury Instructions Due: | April 9, 2013 |
| Final Pretrial Conference: | April 16, 2013 at 4:00 p.m. |
| Trial Date: | April 30, 2013 at 8:30 a.m. |

Jury Trial

Detailed information contained in body of order. Read Carefully:
**SOME DEADLINES MAY BE SHORTER** than Local Rules would allow.

---

I.      Computation of time under this order and under any notice of any scheduling order or notice in this cause shall be in conformity and accordance with Fed. R. Civ. P. 6(a).

II.      DISCOVERY.

    A. The Court encourages and enforces Rule 26 discovery plans agreeable to all parties. Disclosure required by Fed. R. Civ. P. 26(a)(1)(A), (B) and (C) shall be served on opposing counsel, *but not filed with the Clerk*, on or before **April 20, 2012**.

    B. Disclosure of information regarding expert witnesses required by Fed. R. Civ. P. 26(a)(2) shall be made as follows: disclosure of an expert witness's identity under Rule 26(a)(2)(A)

shall be made within three (3) business days of the expert's retention; other disclosure under Rule 26(a)(2)(B) and (C) shall be served on opposing counsel, *but not filed with the Clerk*, by plaintiff on or before **August 3, 2012** and by defendant on or before **September 4, 2012**.

C. **The Court reminds the parties that Fed. R. Civ. P. 5(d) and E.D. Mich. LR 26.2 prohibit the filing with the clerk depositions, interrogatories, requests for the production of documents, requests for admission, responses to such discovery material,** *and certificates of service* **except as provided for in Local Rule 26.2. Additionally, disclosures under Rule 26(a)(1) and (2), the corresponding discovery requests and responses must not be filed with the Clerk until they are used in the proceedings or the Court orders them to be filed pursuant to Local Rule 26.2.** *See* **Fed. R. Civ. P. 5(d).**

D. A list in the form required by Fed. R. Civ. P. 26(a)(3)(A) and (B) of the witnesses, both lay and expert, whom a party may call to testify, shall be filed with the Clerk and served on opposing counsel on or before **February 28, 2013**.

E. Discovery shall be completed on or before **October 31, 2012**. This Court will not order supplemental discovery to take place subsequent to the discovery cutoff date, but the Court will reach the merits of discovery motions, including motions to compel, that were filed before the cutoff date. Discovery can be extended both before and after the discovery cutoff date by stipulation if the extension of time does not affect the motion cutoff, final pretrial conference, or trial dates. Typically, the dispositive motion cutoff date must be at least 120 days before the final pretrial conference to ensure any motions are resolved at least ten days before the final pretrial conference. *See* E.D. Mich. L.R. 16.1(f).

F. Discovery motions may be referred to the magistrate judge. Once a motion has been referred, all communication regarding that motion should be directed to the magistrate judge's chambers.

III.     MOTIONS CHALLENGING EXPERT WITNESSES.

A. The deadline for filing motions challenging the admissibility of expert witness testimony pursuant to Fed. R. Evid. 702, 703 or 705 shall be **November 30, 2012**. If such motion will require a testimonial hearing, it should be filed within sufficient time to permit scheduling a hearing so as not to interfere with the trial date.

B. All such motions should include specific references to the witness's deposition and to all other record material needed to establish the foundation for the motion. The full text of any unpublished source cited should be filed with the Court as an appendix. The appendix shall contain an index. As to cited deposition testimony, counsel are also encouraged to supply the Court with a transcript of cited page(s) together with sufficient accompanying pages to provide context. All citations must have page references.

IV.     DISPOSITIVE MOTIONS. Dispositive motions shall be filed on or before **November 30, 2012**. No party may file more than one motion for summary judgment or motion to dismiss without obtaining leave of court. Challenges to several counts of a complaint shall be brought in a single motion. When filing dispositive motions, parties shall proceed in accordance with the following:

A. Before filing or responding to a dispositive motion, the parties are urged to review the relevant Federal Rules and case law, particularly *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986), for summary judgment motions, and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), for motions to dismiss. The parties need not include a lengthy recitation of the principles from these cases in their briefs. Rather, the focus should be on particularly relevant cases from controlling authorities.

B. Facts stated in the statement of material facts *must* be supported with citations to either the pleadings, interrogatories, admissions, depositions, affidavits, or documentary exhibits. Entire depositions transcripts, however, generally should not be included as exhibits. Rather, counsel should submit the relevant pages along with enough accompanying material to provide context. The full text of any unpublished source, including unpublished opinions or opinions published only in a specialty reporter, should also be included as exhibits. There must be an index of the exhibits.

C. The Court Clerk will send out a notice of the hearing date. The Court does not issue a briefing schedule. The Court enforces the response and reply due dates as set forth in L.R. 7.1(d) and Fed. R. Civ. P. 6, even when the motion hearing is set far in advance.

D. One "courtesy" or "chambers copy" of all dispositive motion papers, as defined in E.D. Mich. LR 7.1(d)(1)(A), (including responses and replies) and all accompanying exhibits must be submitted directly to the judge's chambers. Exhibits must have labels attached which extend beyond the right side of the paper and all papers firmly bound along the left margin ("book-style"). Courtesy copies that do not comply with formatting requirements, including exhibit tabs and book-style binding, will be returned for reformatting before they will be considered.

E. The chambers copy must be sent via first class mail the same day the document is e-filed, unless it relates to a court proceeding scheduled within the next five days or otherwise requires the immediate attention of the Court, in which case the chambers copy must be hand-delivered to chambers not later than the morning of the next business day after the document is e-filed.

V. E-FILING.

A. All attorneys must obtain a PACER account and become a registered user to allow participation in the Case Management/Electronic Case Filing (CM/ECF) system. All attorneys should become familiar with the CM/ECF Policies and Procedures, which can found as an Appendix to the Local Rules.

B. An order to show cause why an attorney should be excused from mandatory electronic filing will issue against any attorney who disregards registering as a user of this District's electronic document filing system.

C. Please note that Federal Rule of Civil Procedure 5.2 requires the parties to redact certain information, including social-security numbers and birth dates, from electronically filed papers. It is the parties'

responsibility to maintain compliance with this rule and neither the Clerk's Office nor the Court reviews papers to ensure personal information has not been made public.

VI.     **MOTIONS IN LIMINE** must be filed by **March 19, 2013**.  It is the intention of the Court that all motions *in limine* and responses shall be received by the final pretrial conference date, therefore counsel must strictly adhere to the deadlines set forth in L.R. 7.1(d)(2).  Counsel should be prepared to address motions *in limine* at the final pretrial conference.

VII.    ALTERNATIVE DISPUTE RESOLUTION.

Case Evaluation.  If the parties opt to participate in case evaluation pursuant to Michigan Court Rule 2.403, a stipulation for case evaluation should be submitted by **September 14, 2012**. Stipulations must state that the parties agree to be bound by all of the provisions of Mich. Ct. R. 2.403, including the provisions regarding sanctions.  Referral to case evaluation panel will be made at the end of discovery.  It is the responsibility of the attorneys to make sure that case evaluation is completed before the final pretrial conference.

Facilitation.   This process, sometimes referred to as facilitative mediation, is a very effective method for case resolution and strongly encouraged. An experienced facilitator should be employed. This process can be used at any time during the litigation, but is most beneficial after the majority of the discovery is completed and before dispositive motions are filed. The parties may arrange for facilitation without contacting chambers.

VIII.   SETTLEMENT CONFERENCE:   The parties shall appear with counsel for a settlement conference on **October 10, 2012** at **4:00 p.m.**.

Persons Required to Attend.  The following person and entities shall *personally* attend the settlement conference:

A. **Trial counsel** for each party;

B. **All parties** who are natural persons;

C. **A representative** on behalf of any other party;

D. **A representative of any insurance carrier** which has undertaken the prosecution or defense of the case and has contractually reserved to itself the ability to settle the action.

Representatives must possess full authority to engage in settlement discussions and to agree upon a full and final settlement.  "Full authority" is authority that exceeds the level of the last demand by the plaintiff.

"Personal attendance" by each party is not satisfied by (1) trial counsel professing to have full authority on behalf of the client or (2) a party being available by telephone.

IX.     MOTION PRACTICE AND ORAL ARGUMENT.

Motions shall be clear and succinct without extensive factual development. Briefs in support of motions must conform to the requirements of L.R. 7.1(c), and, in addition, shall contain a concise statement of facts supported by references to the record.

A courtesy copy of nondispositive motion papers (including any responses and replies) should be submitted directly to judge's chambers **if** those papers include extensive exhibits.

The Court Clerk will send out a notice of the hearing date. The Court does not issue a briefing schedule. Responses and replies shall be filed according to the schedule set forth in L.R. 7.1(d) and Fed. R. Civ. P. 6. The Court will cancel oral argument if, after a review of the briefs, the Court finds that argument would be neither necessary nor helpful.

X.    FINAL PRETRIAL CONFERENCE. The final pretrial conference shall take place on **April 16, 2013** at **4:00 p.m.**. The proposed Joint Final Pretrial Order and proposed Jury Instructions shall be submitted to chambers before the close of business on **April 9, 2013** through CM/ECF via the "proposed order" link located under the Utilities section in typewritten form (double spaced) compatible with WordPerfect version 12.0. The following is the procedure counsel are to utilize to prepare for the final pretrial conference:

A.   Counsel for all parties are directed to confer in order to (1) reach any possible stipulations narrowing the issues of law and fact, (2) deal with non-stipulated issues in the manner stated in this paragraph, and (3) exchange documents that will be offered in evidence at the trial. It shall be the duty of counsel for plaintiff to initiate that meeting and the duty of other counsel to respond to plaintiff's counsel and to offer their full cooperation and assistance. If, after reasonable effort, any party cannot obtain the cooperation of other counsel, it shall be his or her duty to communicate with the Court. Counsels' meeting shall be had sufficiently in advance of the date of the scheduled final pretrial conference with the Court so that counsel for each party can furnish all other counsel with a statement of the real issues the party will offer evidence to support, eliminating any issues that might appear in the pleadings about which there is no real controversy and including in such statement issues of law as well as ultimate issues of fact from the standpoint of each party.

B.   Proposed Joint Final Pretrial Order. Counsel for plaintiff then will prepare a draft joint final pretrial order and submit it to opposing counsel, after which all counsel will jointly submit the final draft of the proposed joint final pretrial order to the Judge's chambers (or in open court, if so directed) on the date fixed for submission. All instructions contained within this order must be followed carefully; they will be binding on the parties at trial. The proposed joint final pretrial order should provide for the signature of the Court, which, when signed, will become an Order of the Court.

C.   Proposed Joint Jury Instructions. In jury cases, the parties are hereby ordered to meet and confer prior to trial to discuss jury instructions. The parties are to provide to chambers a single set of proposed stipulated jury instructions on the date fixed for submission. The Court will provide proposed opening and closing instructions, and counsel are responsible for all instructions related to their specific claims or defenses. Each instruction shall contain references to authority (e.g., "Devitt and Blackmar, Section 11.08"). In addition, each party shall separately submit any additional proposed instructions (in the same form and manner)

to which any other party objects. The parties must make a concerted, good faith effort to narrow the areas of dispute and to discuss each instruction with a view to reaching agreement as to an acceptable form.

If there are any pending motions requiring determination in advance of trial,[1] they should specifically be called to the Court's attention no later than the date of submission of the final pretrial order.

Requests for adjournment of the final pretrial conference should be made in accordance with section XIV of this Order.

XI.     TRIAL. Trial shall commence on **April 30, 2013** at **8:30 a.m.**

XII.    OTHER PRETRIAL MATTERS. At least *ONE WEEK* prior to the trial date all counsel shall furnish to the court the following in proper form:

A. In jury cases, any requests for *VOIR DIRE*

B. A statement of claims or defenses, no longer than two pages, suitable to be read to the jury during opening instructions.

C. In non-jury cases, proposed *FINDINGS OF FACT* and *CONCLUSIONS OF LAW* and trial briefs.

XIII.   EXHIBITS DURING TRIAL.

A. Counsel are required to mark all proposed exhibits in advance of trial; the preferred method is to use the traditional "Plaintiff's Exhibit __" (yellow) and "Defendant's Exhibit __" (blue) stickers, but any clearly marked method is acceptable. A consecutive numbering system should be used by each party. Numbers used by one party shall not be used by other parties.

B. Counsel are required to keep track of all admitted exhibits during trial, and *one week* prior to trial shall submit an exhibit list using the attached exhibit form.

C. If exhibits are voluminous, exhibits used for each witness should be bound separately, and binders should be provided to the Court and each juror.

D. Counsel must confer and purge from one set of binders or files all exhibits not admitted during the course of trial. Such exhibits should be ready to be turned over to the jury foreperson prior to closing jury instructions so that jury deliberations are not delayed.

E. It is the responsibility of the parties to see that the record is complete at the conclusion of trial in accordance with the Local Court Rules.

---

[1]     This includes motions in limine, disputes over specific jury instructions or the admissibility of any evidence at trial upon which the parties desire to present authorities and argument to the Court.

F. The Court requires full disclosure to opposing counsel of computer generated visual or animated evidence and full disclosure of underlying data.

G. Any party intending to use electronic aids to display evidence at trial shall disclose that intention to the Court and all other parties at or before the final pretrial conference. Parties are responsible for providing equipment for such purpose.

XIV.  SCHEDULING ORDER CHANGES.

A. Requests for extensions of time or modification of the scheduled dates are not routinely granted.

B. All requests shall be made *in writing* to the Court setting forth good cause, *see* Fed. R. Civ. P. 16(b), in a (1) stipulation by the parties with a proposed order or (2) motion that states that concurrence was sought and refused. The Court will consider persuasiveness of the reasons for the extension and the overall reasonableness of the request, including its effect on the other dates in the scheduling order.

XV.  ATTORNEY ADMISSIONS.

A. Local Rule 83.20 governs attorney admissions and outlines requirements for the admission of out-of-state counsel who wish to practice in this District. All inquiries regarding admission to the Eastern District must be directed to the Clerk's Office at (989) 894-8800.

B. In every case involving out-of-state counsel, there must be at least one attorney who is admitted to practice in the State of Michigan and can accept service in Michigan. E.D. Mich. L.R. 16(f).

XVI.  PROTECTIVE ORDERS AND FILING UNDER SEAL.

A. The rules for entry of a protective order and filing documents or other information under seal are distinct. *Compare* E.D. Mich. L.R. 26.4 *with* E.D. Mich. L.R. 5.3.

B. Protective orders should generally be submitted by stipulation, and cover information the parties agree is confidential or privileged. However, a stipulated protective order will not be entered if it requires that information covered by the order be filed under seal. Each document or exhibit that a party wishes to file under seal will be reviewed independently pursuant to the standards of Local Rule 5.3.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated:  April 4, 2012

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 4, 2012.

s/Tracy A. Jacobs
TRACY A. JACOBS

**PLAINTIFF'S EXHIBITS**
**DEFENDANT'S EXHIBITS**

| EXHIBIT NO. | DESCRIPTION | DATE OFFERED | OBJECTED TO | RECEIVED |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

# EXHIBIT C

**1:12-cv-10961-TLL-CEB** Mersen USA- Midland-MI Inc v. Graphite Machining Services & Innovations, LLC
Thomas L. Ludington, presiding
Charles E. Binder, referral
**Date filed:** 03/02/2012
**Date terminated:** 09/10/2013
**Date of last filing:** 09/10/2013

# History

| Doc. No. | Dates | | Description |
|---|---|---|---|
| | *Filed & Entered:* | 03/02/2012 | Notice to Parties of Consent of a Civil Action before a Magistrate Judge Option |
| 1 | *Filed & Entered:* | 03/02/2012 | Notice of Removal |
| 2 | *Filed & Entered:* | 03/09/2012 | Answer to Complaint |
| 3 | *Filed & Entered:* | 03/09/2012 | Counterclaim |
| 4 | *Filed & Entered:* | 03/14/2012 | Order |
| 5 | *Filed & Entered:* | 03/14/2012 | zDEACTIVATED - Notice of Non-Admission of Attorney |
| 6 | *Filed & Entered:* | 03/30/2012 | Notice of Appearance |
| 7 | *Filed & Entered:* | 03/30/2012 | Answer to Counterclaim |
| 8 | *Filed & Entered:* | 04/04/2012 | Scheduling Order |
| 9 | *Filed & Entered:* *Terminated:* | 04/10/2012 07/26/2012 | Motion for Summary Judgment |
| 10 | *Filed & Entered:* | 04/11/2012 | Notice of Appearance |
| 11 | *Filed & Entered:* | 04/13/2012 | Notice of Hearing on Motion |
| | *Filed & Entered:* | 04/20/2012 | Notice of Error |
| 12 | *Filed & Entered:* | 04/20/2012 | Certificate of Service |
| 13 | *Filed & Entered:* *Terminated:* | 04/27/2012 07/26/2012 | Motion for Leave to File |
| 14 | *Filed & Entered:* *Terminated:* | 04/27/2012 07/26/2012 | Motion for Leave to File |
| 15 | *Filed & Entered:* | 04/27/2012 | Declaration |
| 16 | *Filed & Entered:* | 05/01/2012 | Reply to Response to Motion |

| [17](#) | *Filed & Entered:* 05/04/2012 | Notice of Hearing on Motion |
|------|------------------------------------------|-----------------------------------------------------------|
| [18](#) | *Filed & Entered:* 05/15/2012 | Response to Motion |
| [19](#) | *Filed & Entered:* 05/16/2012 | Reply to Response to Motion |
| [20](#) | *Filed & Entered:* 05/22/2012 | Reply to Response to Motion |
| [21](#) | *Filed & Entered:* 07/05/2012 | Notice of Determination of Motion Without Oral Argument |
| [22](#) | *Filed & Entered:* 07/12/2012<br>*Terminated:* 07/26/2012 | Motion for Leave to File |
| [23](#) | *Filed & Entered:* 07/26/2012 | Order on Motion for Summary Judgment |
| [24](#) | *Filed & Entered:* 07/27/2012 | Amended Answer to Complaint |
| [25](#) | *Filed & Entered:* 08/27/2012 | Stipulation |
| [26](#) | *Filed & Entered:* 08/30/2012 | Order |
| [27](#) | *Filed & Entered:* 09/04/2012 | Stipulation |
| [28](#) | *Filed & Entered:* 09/07/2012 | Order |
| [29](#) | *Filed & Entered:* 10/12/2012 | Stipulation |
| [30](#) | *Filed & Entered:* 10/12/2012 | Scheduling Order |
| [31](#) | *Filed & Entered:* 10/26/2012 | Certificate of Service |
|  | *Filed & Entered:* 10/29/2012 | Notice of Error |
| [32](#) | *Filed & Entered:* 11/09/2012 | Stipulation |
| [33](#) | *Filed & Entered:* 11/14/2012 | Order |
| [34](#) | *Filed & Entered:* 11/19/2012 | Notice (Other) |
| [35](#) | *Filed & Entered:* 11/19/2012 | Notice (Other) |
|  | *Filed & Entered:* 11/20/2012 | Notice of Error |
| [36](#) | *Filed & Entered:* 11/21/2012<br>*Terminated:* 11/28/2012 | Motion for Order |
| [37](#) | *Filed & Entered:* 11/21/2012<br>*Terminated:* 12/20/2012 | Motion to Compel |
| [38](#) | *Filed & Entered:* 11/26/2012<br>*Terminated:* 11/28/2012 | Motion |
| [39](#) | *Filed & Entered:* 11/28/2012 | Order |
| [40](#) | *Filed & Entered:* 11/30/2012 | Response to Motion |
| [41](#) | *Filed & Entered:* 12/05/2012 | Order Referring Motion to Magistrate Judge |

| [42](#) | *Filed & Entered:* 12/06/2012 | Notice of Hearing on Motion |
|---|---|---|
| [43](#) | *Filed & Entered:* 12/10/2012 | Reply to Response to Motion |
| [44](#) | *Filed & Entered:* 12/10/2012<br>*Terminated:* 12/12/2012 | Motion for Leave to File Excess Pages |
| [45](#) | *Filed & Entered:* 12/11/2012<br>*Terminated:* 12/19/2012 | Motion to Expedite |
| [46](#) | *Filed & Entered:* 12/11/2012<br>*Terminated:* 12/19/2012 | Motion for Protective Order |
| | *Filed & Entered:* 12/12/2012 | Text-Only Order |
| | *Filed & Entered:* 12/14/2012 | Text-Only Order |
| [47](#) | *Filed & Entered:* 12/14/2012 | Stipulation |
| [48](#) | *Filed & Entered:* 12/14/2012 | Sealed Exhibit |
| [49](#) | *Filed & Entered:* 12/14/2012 | Notice of Withdrawal of Attorney |
| [50](#) | *Filed & Entered:* 12/17/2012 | Order Referring Motion to Magistrate Judge |
| | *Filed & Entered:* 12/18/2012 | Motion Hearing |
| | *Filed & Entered:* 12/18/2012 | Motion Hearing |
| [51](#) | *Filed & Entered:* 12/19/2012 | Order on Motion to Expedite |
| [52](#) | *Filed & Entered:* 12/20/2012 | Order on Motion to Compel |
| [53](#) | *Filed & Entered:* 01/09/2013<br>*Terminated:* 02/20/2013 | Motion to Quash |
| [54](#) | *Filed & Entered:* 01/09/2013 | Appendix |
| [55](#) | *Filed & Entered:* 01/10/2013 | Order Referring Motion to Magistrate Judge |
| [56](#) | *Filed & Entered:* 01/17/2013 | Notice of Hearing on Motion |
| | *Filed & Entered:* 01/23/2013 | Set Motion and R&R Deadlines/Hearings |
| [57](#) | *Filed & Entered:* 01/25/2013 | Response to Motion |
| [58](#) | *Filed & Entered:* 02/01/2013<br>*Terminated:* 02/06/2013 | Motion for Leave to File |
| [59](#) | *Filed & Entered:* 02/01/2013 | Stipulation |
| [60](#) | *Filed & Entered:* 02/01/2013<br>*Terminated:* 07/26/2013 | Motion for Summary Judgment |
| [61](#) | *Filed & Entered:* 02/01/2013 | Exhibit |
| [62](#) | *Filed & Entered:* 02/01/2013 | Sealed Exhibit |

| 63 | *Filed & Entered:* 02/06/2013 🔘 Order on Motion for Leave to File |
| 64 | *Filed & Entered:* 02/06/2013 🔘 Order |
|    | *Filed & Entered:* 02/15/2013 🔘 Motion Hearing |
| 65 | *Filed & Entered:* 02/20/2013 🔘 Order on Motion to Quash |
| 66 | *Filed & Entered:* 02/25/2013 🔘 Response to Motion |
| 67 | *Filed & Entered:* 02/25/2013 🔘 Affidavit |
| 68 | *Filed & Entered:* 02/25/2013 🔘 Affidavit |
| 69 | *Filed & Entered:* 02/25/2013 🔘 Exhibit |
| 70 | *Filed & Entered:* 02/25/2013 🔘 Exhibit |
| 71 | *Filed & Entered:* 02/25/2013 🔘 Exhibit |
| 72 | *Filed & Entered:* 02/25/2013 🔘 Exhibit |
| 73 | *Filed & Entered:* 02/25/2013 🔘 Exhibit |
| 74 | *Filed & Entered:* 02/25/2013 🔘 Exhibit |
| 75 | *Filed & Entered:* 02/25/2013 🔘 Exhibit |
| 76 | *Filed & Entered:* 02/25/2013 🔘 Affidavit |
| 77 | *Filed & Entered:* 02/25/2013 🔘 Exhibit |
| 78 | *Filed & Entered:* 02/25/2013 🔘 Exhibit |
| 79 | *Filed & Entered:* 02/25/2013 🔘 Exhibit |
| 80 | *Filed & Entered:* 02/25/2013 🔘 Exhibit |
| 81 | *Filed & Entered:* 02/25/2013 🔘 Exhibit |
| 82 | *Filed & Entered:* 02/25/2013 🔘 Exhibit |
| 83 | *Filed & Entered:* 02/25/2013 🔘 Exhibit |
| 84 | *Filed & Entered:* 02/25/2013 🔘 Exhibit |
| 85 | *Filed & Entered:* 02/25/2013 🔘 Exhibit |
| 86 | *Filed & Entered:* 02/25/2013 🔘 Exhibit |
| 87 | *Filed & Entered:* 02/25/2013 🔘 Exhibit |
| 88 | *Filed & Entered:* 02/25/2013 🔘 Exhibit |
| 89 | *Filed & Entered:* 02/25/2013 🔘 Exhibit |
| 90 | *Filed & Entered:* 02/25/2013 🔘 Exhibit |
| 91 | *Filed & Entered:* 02/25/2013 🔘 Stipulation |

| 92 | *Filed & Entered:* 02/26/2013 ⬤ Sealed Exhibit |
|-----|---|
| 93 | *Filed & Entered:* 02/26/2013 ⬤ Sealed Exhibit |
| 94 | *Filed & Entered:* 02/26/2013 ⬤ Sealed Exhibit |
| 95 | *Filed & Entered:* 02/26/2013 ⬤ Sealed Exhibit |
| 96 | *Filed & Entered:* 02/26/2013 ⬤ Sealed Exhibit |
| 97 | *Filed & Entered:* 02/26/2013 ⬤ Sealed Exhibit |
| 98 | *Filed & Entered:* 02/26/2013 ⬤ Sealed Exhibit |
| 99 | *Filed & Entered:* 02/26/2013 ⬤ Sealed Exhibit |
| 100 | *Filed & Entered:* 02/26/2013 ⬤ Sealed Exhibit |
| 101 | *Filed & Entered:* 02/26/2013 ⬤ Sealed Exhibit |
| 102 | *Filed & Entered:* 02/26/2013 ⬤ Sealed Exhibit |
| 103 | *Filed & Entered:* 02/26/2013 ⬤ Sealed Exhibit |
| 104 | *Filed & Entered:* 02/26/2013 ⬤ Sealed Exhibit |
| 105 | *Filed & Entered:* 02/26/2013 ⬤ Sealed Exhibit |
| 106 | *Filed & Entered:* 02/26/2013 ⬤ Sealed Exhibit |
| 107 | *Filed & Entered:* 02/26/2013 ⬤ Sealed Exhibit |
| 108 | *Filed & Entered:* 02/26/2013 ⬤ Sealed Exhibit |
| 109 | *Filed & Entered:* 02/26/2013 ⬤ Sealed Exhibit |
| 110 | *Filed & Entered:* 02/26/2013 ⬤ Sealed Exhibit |
| 111 | *Filed & Entered:* 02/26/2013 ⬤ Sealed Exhibit |
| 112 | *Filed & Entered:* 02/26/2013 ⬤ Sealed Exhibit |
| 113 | *Filed & Entered:* 02/26/2013 ⬤ Sealed Exhibit |
| 114 | *Filed & Entered:* 02/26/2013 ⬤ Sealed Exhibit |
| 115 | *Filed & Entered:* 02/26/2013 ⬤ Sealed Exhibit |
| 116 | *Filed & Entered:* 02/26/2013 ⬤ Sealed Exhibit |
| 117 | *Filed & Entered:* 02/26/2013 ⬤ Sealed Exhibit |
| 118 | *Filed & Entered:* 02/26/2013 ⬤ Sealed Exhibit |
| 119 | *Filed & Entered:* 02/26/2013 ⬤ Sealed Exhibit |
| 120 | *Filed & Entered:* 02/26/2013 ⬤ Sealed Exhibit |
| 121 | *Filed & Entered:* 02/26/2013 ⬤ Sealed Exhibit |

| 122 | *Filed & Entered:* 02/26/2013 | 🔵 Sealed Exhibit |
|---|---|---|
| 123 | *Filed & Entered:* 02/27/2013 | 🔵 Order |
| 124 | *Filed & Entered:* 02/27/2013 | 🔵 Order |
| 125 | *Filed & Entered:* 03/01/2013 | 🔵 Stipulation and Order |
| 126 | *Filed & Entered:* 03/05/2013 | 🔵 Stipulation |
| 127 | *Filed & Entered:* 03/08/2013 | 🔵 Order |
| 128 | *Filed & Entered:* 03/13/2013<br>*Terminated:* 03/14/2013 | 🔵 Motion for Leave to File Excess Pages |
| 129 | *Filed & Entered:* 03/14/2013 | 🔵 Order on Motion for Leave to File Excess Pages |
| 130 | *Filed & Entered:* 03/14/2013 | 🔵 Reply to Response to Motion |
| 131 | *Filed & Entered:* 05/10/2013<br>*Terminated:* 05/22/2013 | 🔵 Motion for Leave to File |
|  | *Filed & Entered:* 05/14/2013 | 🔵 Text-Only Notice of Hearing Cancelled |
| 132 | *Filed & Entered:* 05/22/2013 | 🔵 Memorandum Opinion & Order |
| 133 | *Filed & Entered:* 05/31/2013 | 🔵 Stipulation |
| 134 | *Filed & Entered:* 05/31/2013 | 🔵 Supplemental Brief |
| 135 | *Filed & Entered:* 05/31/2013 | 🔵 Sealed Exhibit |
| 136 | *Filed & Entered:* 06/11/2013 | 🔵 Stipulation |
| 137 | *Filed & Entered:* 06/12/2013 | 🔵 Order to Strike |
| 138 | *Filed & Entered:* 06/14/2013 | 🔵 Supplemental Brief |
| 139 | *Filed & Entered:* 06/14/2013 | 🔵 Exhibit |
| 140 | *Filed & Entered:* 06/14/2013 | 🔵 Exhibit |
| 141 | *Filed & Entered:* 06/14/2013 | 🔵 Exhibit |
| 142 | *Filed & Entered:* 06/19/2013<br>*Terminated:* 06/26/2013 | 🔵 Motion to Amend/Correct |
| 143 | *Filed & Entered:* 06/20/2013 | 🔵 Order to Strike |
| 144 | *Filed & Entered:* 06/26/2013 | 🔵 Order on Motion to Amend/Correct |
| 146 | *Filed & Entered:* 07/01/2013 | 🔵 Supplemental Brief |
| 147 | *Filed & Entered:* 07/01/2013 | 🔵 Exhibit |
| 148 | *Filed & Entered:* 07/01/2013 | 🔵 Exhibit |
| 149 | *Filed & Entered:* 07/01/2013 | 🔵 Exhibit |

| 150 | *Filed & Entered:* 07/01/2013 | ● Supplemental Brief |
| 151 | *Filed & Entered:* 07/01/2013 | ● Exhibit |
| 152 | *Filed & Entered:* 07/01/2013 | ● Exhibit |
| 153 | *Filed & Entered:* 07/17/2013 | ● Witness List |
| 154 | *Filed & Entered:* 07/17/2013 | ● Witness List |
| 155 | *Filed & Entered:* 07/26/2013 | ● Stipulation and Order |
| 156 | *Filed & Entered:* 07/26/2013 | ● Order on Motion for Summary Judgment |
| 157 | *Filed & Entered:* 07/30/2013 | ● Exhibit |
| 158 | *Filed & Entered:* 07/30/2013 | ● Exhibit |
| 159 | *Filed & Entered:* 09/10/2013 | ● Stipulated Order Dismissing Case |

| PACER Service Center | | |
| --- | --- | --- |
| **Transaction Receipt** | | |
| 01/03/2023 17:12:58 | | |
| **PACER Login:** | wilkpauljr | **Client Code:** | |
| **Description:** | History/Documents | **Search Criteria:** | 1:12-cv-10961-TLL-CEB |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

# EXHIBIT D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MERSEN USA - MIDLAND-MI INC, a
Michigan corporation,

        Plaintiff,

    vs.

GRAPHITE MACHINING SERVICES &
INNOVATIONS, LLC, a Delaware limited
liability company, f/k/a GRAPHITE
MACHINING SERVICES, INC., an Arizona
corporation.

        Defendant

Civil Action No: 1:12-cv-10961-TLL-CEB

Honorable Thomas L. Ludington

---

Attorneys for Defendant
Mark J. Brissette
Seward, Tally & Piggott, P.C.
1009 Washington Avenue
Bay City, MI 48708-5780
(989) 892-6551

## AFFIDAVIT OF PETER GUERCIO

STATE OF ARIZONA    )
                       ) ss.
COUNTY OF MARICOPA  )

    I, Peter Guercio, being duly sworn, state:

    1. I am the President of Graphite Machining Services & Innovations, LLC. ("GMSI"), a Delaware limited liability company. GMSI is the defendant and counter-claimant in the above-captioned matter, and I make this Affidavit in support of GMSI's Answer, affirmative defenses and Counterclaims.

2. As President of GMSI, I am aware of monetary obligations of GMSI, product failures, shipments of CVD SIC coated graphite shipped, received, and returned to Mersen, and invoices GMSI has paid.

3. Based on my knowledge and review of GMSI records, some of the coating provided by Mersen, which is the basis for the charges on the invoices attached to Mersen's Complaint in the above-captioned matter and the basis for Mersen's claim for account stated and damages, was defective and not in accordance with GMSI's product specifications on its work orders, its requests for coating, its quality expectations, the parties' contracts and course of dealing, or industry standards. Some of the coating provided by Mersen, which GMSI has paid Mersen for, was defective and not in accordance with GMSI's product specifications on its work orders, its requests for coating, its quality expectations, the parties' contracts and course of dealing, or industry standards. True and accurate copies of proof of payment, such as checks and wires, along with the invoices and work orders for Mersen's coating that failed are attached as Exhibit F. To date, Mersen owes GMSI at least $212,518.00 for the defective coating, GMSI's graphite parts that were rendered unusable or were destroyed because of the defective coating, and the cost to replace the graphite parts and to re-coat the graphite parts. Attached as Exhibit A is a true and accurate copy of GMSI's spreadsheet documenting the failed products and the associated costs to GMSI. Some of these parts are still in Mersen's possession, as noted in Exhibit A under shipment #1 and in the emails and failure reports demonstrating the shipment of failed parts to Mersen attached as Exhibit B. There are currently unused products that were coated by Mersen and shipped with the above defective batches of product and based on my experience in the industry and with Mersen, it is my opinion that there is a strong probability that these coated products are also defective or will not be used by GMSI customers because of the rampant defects in Mersen's coating and Mersen will owe additional offsetting amounts to GMSI after more coating failures or misrepresentations about the quality of the coating are revealed, GMSI customers request additional replacement parts due to the defective coating, or both.

4.  Based on my knowledge and review of GMSI records, Mersen is in possession of 3 graphite parts that Mersen was to coat, but never shipped or returned the parts. These 3 parts in Mersen's possession are documented in the emails, invoices and work orders attached as Exhibit C. The cost to GMSI to produce these 3 missing graphite parts is at least $3,795 and Mersen owes this amount to GMSI.

5.  Based on my knowledge and review of GMSI records, Mersen has promised GMSI that it would credit GMSI for failed or defective products. To date, all of these credits have not been received and Mersen owes GMSI at least $16,130. Credit memos were issued for at least $49,780 and some of these credits may also still be owed as well, but the exact amounts have not yet been determined due to inaccessibility to Mersen's accounting. A true and accurate copy of the emails received from Mersen, credit memos issued by Mersen, and accounts payable showing the credits not yet received are attached as Exhibit D.

6.  GMSI was required to re-qualify its products with some of its existing customers in order to retain their business after the rampant failing of Mersen's coating. The costs incurred by GMSI to re-qualify GMSI's products is currently no less than $29,540. Attached as Exhibit E is a true and accurate copy a spreadsheet and GMSI invoices documenting the products provided for requalification. Based on my experience with my customers, I anticipate additional costs being incurred to re-qualify GMSI products to retain its customers after the rampant failures of Mersen's coating on GMSI products. These costs were incurred as a result of Mersen's failed coating and Mersen owes GMSI at least $29,540 for the damages its coating caused.

7.  Mersen's failed coating has caused GMSI to lose revenue, and to incur costs to repair the credibility and reputation of GMSI. The extent of these costs have yet to be determined, but were caused by Mersen's failed coating and Mersen owes GMSI monies for these damages.

8.  The amounts owed to GMSI currently remain outstanding.

9.  Mersen is justly indebted to GMSI in an amount no less than $ 261,983.00. It is my opinion that the amount of indebtedness will grow as more replacement parts are requested by

3

customers, additional failed coating is revealed, additional outstanding credit memos are discovered, and the damages to GMSI's reputation and customer relations are assessed.

10. Mersen was aware that GMSI expected to be credited for products that failed because of Mersen's coating, as evidenced by the credit memos issued by Mersen that are attached hereto as Exhibit D.

11. I presented Mersen with a report illustrating the failures of Mersen's coating on or around November 6, 2011. A true and accurate copy of this report is attached as Exhibit G.

12. Mersen was notified that its coating had failed on products that were returned to Mersen at their request on or around January 12, 2012 and February 6, 2012. I sent an email to Brian Marquardt of Mersen on January 12, 2012 memorializing our discussion about the failures and notifying him of the failed parts that were being shipped to Mersen. This email is attached hereto as part of Exhibit B.

13. A GMSI employee also notified Mersen of its failed parts that would need to be replaced and were not acceptable on December 9, 2011. This email is attached hereto as part of Exhibit B.

14. GMSI is not indebted to Mersen in the amount of $409,866.00.

4

I make this affidavit based upon personal knowledge and if called as a witness, could attest to the truth of the matters asserted in this Affidavit.

Peter Guercio

STATE OF ARIZONA    )
                         ) ss.
COUNTY OF MARICOPA  )

Subscribed and sworn to before me this 26th day of April, 2012.

KRISTOPHER SISCO

Notary Public
Maricopa County, Arizona

KRISTOPHER SISCO
NOTARY PUBLIC - ARIZONA
Maricopa County
My Commission Expires
August 14, 2015

5

# EXHIBIT E

| Administrative Services Contract –Weekly Invoiced Program |
| :-: |
| Corizon |

This Contract commences on ___December 1, 2015___ (the "Effective Date") and is made between Blue Cross Blue Shield of Michigan, a Michigan non-profit mutual insurance corporation, with offices at 600 Lafayette East, Detroit, Michigan 48226-2998 ("BCBSM") and _____Corizon_____ with offices at _105 Westpark Drive Suite 200, Brentwood,TN 37027_____ ("Group"), as the plan sponsor and administrator of its group health care plan ("Plan").

BCBSM and Group have agreed that BCBSM shall administer Claims processing for the Plan. This Contract sets forth the administrative responsibilities of BCBSM and Group's financial and other obligations with respect to BCBSM's role as a service provider to the Plan.

By entering into this Contract, Group and BCBSM hereby agree that, to the extent the Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), their relationship is that of Group as "Plan Fiduciary" and BCBSM as "Service Provider" as those terms are used in Department of Labor guidance including 29 C.F.R. §2550.408b-2.

BCBSM and Group agree as follows:

## ARTICLE I
## DEFINITIONS

A.   **"Amounts Billed"** means the amount that Group shall reimburse and pay BCBSM for Claims which have been processed and paid by BCBSM or another BCBS Plan under the terms of this Contract, Pharmacy Benefits if applicable, the Administrative Fee set forth in Schedule A, any Additional Administrative Compensation ("AAC") as set forth in Schedule A, Michigan Claims Tax, Pharmacy benefit fees as set forth in Schedule A, Health Care Provider Interest, and other fees and charges as set forth in Schedules A and B.

B.   **"BCBS Plan"** means a company that has been licensed by BCBSA other than BCBSM.

C.   **"BCBSA"** means the Blue Cross and Blue Shield Association.

D.   **"BlueCard Program"** means the national program established by BCBSA under which Enrollee Claims are processed by BCBS Plans when Enrollees receive health care services outside of the geographic area that BCBSM serves. BCBSA mandates the policies, procedures and disclosures of the BlueCard Program and amends them from time to time. Schedule B sets forth BCBSA's required disclosures for the BlueCard Program and is incorporated into this Contract. If BCBSA amends the disclosures, such amendments shall automatically become a part of this Contract upon BCBSM giving 60 days prior written notice to Group.

E.   **"Claim"** means a request for payment from a health care provider for a health care service provided to an Enrollee, with an incurred date for the service during the term of this Contract. Claims billed to Group include all amounts that BCBSM reimburses health care providers including both service-based and value-based reimbursement. BCBSM negotiates provider reimbursement rates on its own behalf and may set the rate for health care services to cover any BCBSM obligation to health care providers. BCBSM does not retain any portion of Claims as compensation. Provider reimbursement is governed by separate agreements with providers, BCBSM standard operating procedures for Claims, and BCBSM Quality Programs.

Claims received from an out-of-state BCBS Plan for a health care service provided to an Enrollee out-of-state are paid according to that BCBS Plan's health provider contracts and processed according to BlueCard Program standard operating procedures. Pursuant to the BlueCard Program, as described in Schedule B, out-of-state Claims may include a BlueCard Access Fee for processing the claim. Out-

1

of-state Claims are reported and billed to the Group as they are received by BCBSM from the out-of-state BCBS Plan.

F.    "**Contract**" means this Administrative Services Contract – Weekly Invoiced Program, as may be amended from time to time, and any Schedules, Parts, Exhibits and Addenda attached hereto and incorporated herein by reference.

G.    "**Contract Year**" means the period from the Effective Date to the first Renewal Date, or the period from one Renewal Date to the next Renewal Date. If termination occurs other than at the end of a Contract Year, Contract Year means that period from the Effective Date or the most recent Renewal Date through the date of termination.

H.    "**Coverages**" means the health care benefits set forth in Universal Group Application or Part C of the Group Enrollment and Coverage Agreement, which is incorporated into this Contract.

I.    "**Employee**" means the following which are eligible and enrolled for Coverage under the terms of the Plan or as required by law:  (i) employees as designated by Group; (ii) retirees and their surviving spouses as designated by the Group; and (iii) COBRA beneficiaries.

J.    "**Enrollee**" means an individual that Group enrolled as an employee, spouse or dependent in the Plan pursuant to Article II.B, either as an Employee or as a dependent of an Employee.

K.    "**ERISA**" means the Employee Retirement Income Security Act of 1974, as amended, 29 USC 1101, *et seq*, and regulations promulgated thereunder.

L.    "**HIPAA**" means the Health Insurance Portability and Accountability Act of 1996, as amended, Public Law 104 -191 of 1996, *et seq*, and regulations promulgated thereunder.

M.    "**IBNR Claims**" means Claims which are incurred during the term of this Contract, including during the Transition Assistance Period, but have not been reported to the Group as Amounts Billed or paid and which remain the Group's liability.

N.    "**PPACA**" means the Patient Protection and Affordable Care Act, as amended, Public Law 111-148 of 2010, *et seq*, and regulations promulgated thereunder.

O.    "**Quality Programs**" refer to BCBSM programs funded with value-based provider reimbursement. Quality Programs are governed by separate agreements with health care providers and are designed to improve health care outcomes and control health care costs.

P.    "**Renewal Date**" means the date one year after the Effective Date, and the same date of every subsequent year. The Renewal Date may be changed by mutual agreement of BCBSM and Group.

Q.    "**Transition Assistance Period (TAP)**" means a period of twenty-four (24) months after Termination has been effectively demanded under Article IV, during which BCBSM shall provide those services, and Group shall perform those obligations, set forth in Article IV, Section B.

## ARTICLE II
## GENERAL RESPONSIBILITIES

A.    Claims Administrator Status.

If the Plan is governed by ERISA, based on Group's disclosure of ERISA status in this Contract, Group hereby delegates to BCBSM the responsibility and discretionary authority as claims administrator to makes final benefit determinations and plan interpretations necessary to make those benefit determinations. BCBSM's claims administrator responsibilities extend only to the full and fair review of claims and administrative appeals as set forth in ERISA §433. By assuming these specifically delegated responsibilities as claims administrator, BCBSM does not thereby assume any other duty of the Group as Plan Administrator or any other fiduciary function Group performs on behalf of its Plan. Any determination or interpretation made by BCBSM pursuant to its claim determination authority is

binding on the Enrollee, Group, and BCBSM unless it is demonstrated that the determination or interpretation was arbitrary and capricious. Group retains all other fiduciary responsibilities and duties under ERISA not specifically delegated to BCBSM in this Contract.

BCBSM shall not be responsible for Group's failure to meet any of its financial obligations or Plan Administrator responsibilities with respect to the Plan.

B.    **Eligibility and Enrollment.**

Prior to the Effective Date, Group shall notify BCBSM of all Enrollees that will be covered by the Plan. During the term of this Contract, following agreed upon procedures, Group shall notify BCBSM of all changes in Plan enrollment.  Until BCBSM has been properly notified of changes to Group's Plan enrollment, BCBSM shall continue to process Claims for Enrollees as listed on BCBSM's computer membership programs. Group represents and warrants that any eligibility and status changes it requests are compliant with and permissible under applicable state and federal law, including the PPACA; and, agrees that it will only request eligibility and status change requests that are compliant with and permissible under applicable state and federal law, including the PPACA.

C.    **Claims Processing.**

During the term of this Contract, requests for payment from Michigan providers will be directly submitted to BCBSM and shall be processed according to BCBSM's standard operating procedures for Claims. Requests for payment from out-of-state providers may, depending on the type of request for payment, be directly submitted to the appropriate out-of-state BCBS Plan and shall be processed pursuant to the BlueCard Program as set forth in Schedule B.

D.    **Disputed Claims.**

Group shall notify BCBSM in writing of any Claim that Group disputes within 60 days of Group's access to a paid Claims listing. BCBSM shall investigate such Claims and respond to Group within a reasonable time period. Upon BCBSM's request, Group shall execute any reasonably necessary documents that will allow BCBSM to recover any amounts that may be owed by a third party with respect to such disputed Claim.  If BCBSM recovers any amount from a third party or if BCBSM determines that the disputed Claim is not Group's financial responsibility or is incorrect, then BCBSM shall give Group a credit for the recovered or corrected amount (reduced by any stop loss credits given by BCBSM relating to such disputed Claim).

E.    **Subrogation.**

BCBSM shall be subrogated to all of Group's, the Plan's, or an Enrollee's rights with respect to any Claim, however, BCBSM is not obligated to institute or become involved in any litigation concerning such Claim.  BCBSM will use reasonable efforts to identify Claims in which the Group may have a subrogation or reimbursement interest. BCBSM will evaluate information provided by the Enrollee and other sources to determine whether a subrogation or reimbursement interest exists. BCBSM will not be obligated to undertake any such recovery litigation unless mutually agreed to by BCBSM and Group in writing. Absent written agreement, should Group elect to pursue such recovery litigation, BCBSM agrees to cooperate in Group's recovery efforts. BCBSM will remit to Group the funds recovered from third parties, less any expenses BCBSM has incurred in the recovery effort, including any attorney fees. BCBSM may assign or subcontract a portion of its duties under this provision of the Contract to third parties.  Group will assist BCBSM or its assignee or subcontractor as reasonably necessary for BCBSM, its assignee, or subcontractor to carry out its duties under this provision.

Group authorizes BCBSM to act on behalf of Group and/or the Plan in any health care class action litigation of which BCBSM has knowledge, including but not by way of limitation, drug manufacturer and product liability litigation.  BCBSM will take reasonable steps to notify Group of such class action litigation.  Group will notify BCBSM if Group desires to independently pursue such litigation and BCBSM will reasonably cooperate with Group.  As part of BCBSM's subrogation duties, BCBSM will use reasonable efforts to identify Claims that may be included in such class action litigation. BCBSM may institute and participate in such class action litigation, however, Group acknowledges that

3

BCBSM is not obligated to do so unless BCBSM and Group otherwise agree in writing. Group will reasonably cooperate with BCBSM with respect to any such litigation. BCBSM may assign or subcontract a portion of its duties under this provision to third parties. Group authorizes BCBSM to settle or compromise any litigation and BCBSM will remit to Group any funds recovered, less any expenses that BCBSM has incurred in participation of such class action litigation.

F.   **Litigation.**

If a third party initiates a claim, suit, or proceeding against the Plan, Group, or BCBSM relating to benefits payable under the Plan or any of the administrative services subject to this Contract ("Litigation"):

1.   Each party shall provide prompt written notice of the Litigation to the other party if served with such Litigation.

2.   Group may, with BCBSM's consent, request that BCBSM select counsel and defend litigation. BCBSM retains the right to deny this request and enforce Group's obligation to defend the Litigation.

3.   Whenever Group or BCBSM is a party in any Litigation, regardless of who is obligated to defend the litigation, Group and BCBSM each reserve the right, at its own cost and expense, to retain counsel to protect its own interests.

4.   Regardless of who is obligated to defend the litigation, Group and BCBSM shall reasonably cooperate with each other to provide all relevant information and documents within their respective control that are not subject to a privilege or confidentiality obligation; and to reasonably assist each other to defend, settle, compromise, or otherwise resolve the Litigation. Whenever either party is served with any Litigation, the party served shall take all steps necessary to prevent a default in the Litigation prior to determining which party will defend such Litigation.

5.   BCBSM shall have full authority to settle or compromise such Litigation, without Group's specific consent, unless:

   a.   $50,000 or more is at issue in the Litigation;
   b.   State tax issues or mandated benefit issues are part of the Litigation and Group has requested BCBSM to defend the Litigation; or
   c.   Settlement of the Litigation could have a material adverse impact on Plan costs or administration.

   If Group's consent to settle or compromise Litigation is required, such consent shall not be unreasonably withheld. If Group withholds consent for any reason and the final resolution of the Litigation is equal to or greater than a settlement or compromise proposed by BCBSM, Group shall pay BCBSM the additional cost of any subsequent settlement, compromise or judgment including all of BCBSM's reasonable attorney fees and costs for proceeding with the Litigation.

6.   When Group is obligated to defend the Litigation, Group shall have full authority to settle or compromise such Litigation without BCBSM's consent, unless BCBSM has notified Group that the Litigation may have a material adverse impact on BCBSM.

   If BCBSM's consent to settle or compromise Litigation is required, such consent shall not be unreasonably withheld. If BCBSM withholds consent for any reason and the final resolution of the Litigation is equal to or greater than a settlement or compromise proposed by Group, BCBSM shall pay the additional cost of any subsequent settlement, compromise or judgment including all of Group's reasonable attorney fees and costs for proceeding with the Litigation.

7.   When BCBSM defends the Litigation, the cost and expenses of such defense shall be paid by BCBSM.  The cost and expenses of such defense shall include reasonable attorney fees and other reasonable litigation costs, however, any settlement or payment of amounts that are the financial responsibility of Group, including but not limited to Claims, (via judgment, award, etc.) shall be paid by Group.

8.   Subject to paragraph 7 above, when the Group defends the Litigation, the cost and expenses of such defense shall be paid by Group.  The cost and expenses of such defense shall include reasonable attorney fees and other reasonable litigation costs and any settlement or payment for benefits or Claims shall be paid by Group.

G.   **Group Audits.**

Group, at its own expense, shall have the right to audit Claims incurred under this Contract; however, audits shall not occur more frequently than once every twelve months and shall not include Claims from previously audited periods or Claims paid prior to the last 24 months. Both parties acknowledge that Claims with incurred dates over two years old may be more costly to retrieve and that it may not be possible to recover over-payments for these Claims; however, BCBSM shall use best efforts to retrieve such Claims.

All audits shall be conducted pursuant to BCBSM corporate policy and other requirements at the time of the audit. The parties acknowledge staffing constraints may exist in servicing concurrent Group initiated audits.  Therefore after notice from Group requesting an audit, BCBSM will have 60 to 90 days, depending on scope and sample size, to begin gathering requested documentation and to schedule the on-site phase of the audit.

Sample sizes shall not exceed 200 Claims and shall be selected to meet standard statistical requirements (i.e., 95% Confidence Level; precision of +/- 3%).  Group shall reimburse BCBSM for Claims documentation in excess of 200 Claims at $50 per Claim.

Following the on-site activity and prior to disclosing the audit findings to Group, the auditor shall meet with BCBSM Management and present the audit findings.  BCBSM, depending upon the scope of the audit, shall be given a reasonable period of time to respond to the findings and provide additional documentation to the Auditor before the Auditor discloses the audit findings to the Group.

BCBSM shall have no obligation to make any payments in connection with audit findings to Group unless there has been a recovery from the provider, Enrollee, or third-party carrier as applicable.  No adjustments or refunds shall be made on the basis of the auditor's statistical projections of sampled dollar errors.   An audit error will not be assessed if the Claim payment is consistent with BCBSM policies and procedures, or consistent with specific provisions contained in this Contract or other written Group instructions agreed to by BCBSM.

Prior to any audit, Group and BCBSM must mutually agree upon any independent third party auditor that Group wishes to perform the audit.  Additionally, prior to audit, Group and any third party auditor shall sign all documents BCBSM believes necessary for the audit which will, at a minimum, provide for:  the scope of the audit; the costs for which BCBSM is to be reimbursed by Group; the protection of confidential and proprietary information belonging to BCBSM, and of any patient specific information; and the indemnification and hold harmless of BCBSM from any claims, actions, demands or loss, including all expenses and reasonable attorney fees, arising from any suit or other action brought by an individual or provider to the extent caused by Group or its auditor.

Group shall provide BCBSM with a copy of any internal audit or review of the services performed under any agreement with BCBSM.

H.   **Disclosures.**

Group shall disclose the following to Enrollees in writing:

1.   BCBSM services being provided.
2.   BCBSM does not insure any Enrollees.
3.   Group is responsible for the payment of Claims.
4.   Group is responsible for changes in Plan benefits.
5.   Group is responsible for enrollment.

I.   **Health Care Provider Interest.**

Group acknowledges that various states including Michigan have enacted prompt payment legislation with respect to the payment of Claims that may require the payment of interest to providers under circumstances dictated by statute.  BCBSM will invoice the Group for any interest required by statute and Group shall pay such interest.  Additionally, out-of-state Claims may be inclusive of any interest owed by statute or required by the terms of provider contracts with the out-of-state BCBS Plan.  Out-of-state Claims are reported and billed to Group as submitted to BCBSM by the out-of-state BCBS Plan.

J.   **Confidentiality.**

The terms of this Contract and the items set forth below are confidential and shall not be disclosed or released to a third party without the prior written consent of BCBSM, unless required by law.

1.   Claim Information
Enrollee personal or individually identifiable health information.

2.   Provider Proprietary Information
Health care provider names, addresses, tax identification numbers, and financial amounts paid to such providers.

3.   BCBSM and Other BCBS Plan Proprietary Information
BCBSM's or any other BCBS Plan's methods of reimbursement, amounts of payments, discounts and access fees; BCBSM's administrative fees and, if applicable, stop loss fees; those processes, methods, and systems developed for collecting, organizing, maintaining, relating, processing and transacting comprehensive membership, provider reimbursement and health care utilization data.

K.   **Amounts Billed.**

1.   Claims:

The Claims billed to Group include both service-based and value-based reimbursement to health care providers.  Group acknowledges that BCBSM's negotiated reimbursement rates include all reimbursement obligations to providers including provider obligations and entitlements under BCBSM Quality Programs.  Service-based reimbursement means the portion of the negotiated rate attributed to a particular health care service.  Value-based reimbursement is the portion of the negotiated reimbursement rate attributable to BCBSM Quality Programs, as described in the Exhibit to Schedule A.

BCBSM negotiates provider reimbursement rates and settles provider obligations on its own behalf, not Group.  Through this contract, Group receives the benefit of BCBSM provider rates, but it has no entitlement to a particular rate or to unbundle the service-based or value-based components of Claims.  BCBSM does not retain any portion of Claims as compensation.  All amounts collected from Group in Claims are used to satisfy provider obligations.  Group agrees to pay Claims as defined herein.

Out-of-state Claims processed through the BlueCard Program, shall be calculated according to the BlueCard Program policies and procedures, as set forth in Schedule B.

6

ASC Weekly Invoiced Program – CID#  279476

2.   <u>Additional Administrative Compensation:</u>

Group shall pay Additional Administrative Compensation ("AAC") as set forth in Schedule A unless the Group has elected a Full Fixed Administrative Fee in lieu of AAC. AAC is calculated as a percentage of BCBSM discounts on Michigan hospital Claims with a cap and floor as set forth in Schedule A.

3.   <u>Health Care Provider Interest:</u>

See Article II.I.

4.   <u>Taxes and Surcharges:</u>

State and Federal governments may impose surcharges or taxes on Claims. The State of Michigan imposes a tax on all Michigan Claims for Michigan residents. Tax rates are governed by applicable law.

Such surcharges or taxes, where imposed by law, may be invoiced to Group or billed and reported to Group in Claims. Group agrees to pay all such surcharges or taxes.

5.   <u>Pharmacy Benefits Services:</u>

If Group elects BCBSM pharmacy benefits, Amounts Billed shall include pharmacy Claims and any claims processing, pharmacy fees, and rebate processing fees set forth in Schedule A.

6.   Amounts Billed shall also include any fee or charge identified in Group's Schedule A, including but not limited to Group's Administrative Fee.

L.   **Coordination with Medicare.**

Group shall timely notify BCBSM whether Medicare is the primary payer for Claims of any Enrollee. BCBSM shall change such Enrollee's eligibility record within 15 business days of BCBSM's receipt of Group's notice. Group shall indemnify and hold harmless BCBSM for any claim, demand, judgment, penalty or other liability that arises out of Group's failure to provide timely notice to BCBSM.

M.   **Pharmacy Benefits.**

To the extent Group has engaged BCBSM to administer prescription drug claims for its Plan, BCBSM or its subcontractor shall process all prescription drug claims according to Group's benefit design and BCBSM's participating pharmacy contracts.

Group acknowledges that payments to participating pharmacies may include prescription drug costs, dispensing fees, and incentive fees for dispensing a generic drug or compounding a prescription drug.

Group authorizes BCBSM to act and serve as Group's exclusive agent for the purpose of negotiating with and obtaining rebates from pharmaceutical manufacturers. Group understands and agrees that BCBSM may directly contract with pharmaceutical manufacturers or BCBSM may contract with various subcontractors that have contracts with pharmaceutical manufacturers. BCBSM's rebate administrators retain a portion of the total rebates collected from drug manufacturers as a rebate administration fee. BCBSM will pass on to Group rebates net of rebate administration fees. If BCBSM receives rebate adjustments or de minimis amounts of unidentifiable rebates that cannot practicably be tied to particular claims, BCBSM will proportionally allocate those rebate amounts to customers with pharmacy benefits.

Pharmacy administration fees and rebate administration fees are set forth in Schedule A.

ASC Weekly Invoiced Program – CID#   279476

ARTICLE III
FINANCIAL RESPONSIBILITIES

A.   **Group Responsibilities.**

Group shall be liable for all risks, financial obligations, Amounts Billed, fees, and interest set forth in this Contract, including Schedules A, B, and C. Group shall also be liable for any statutory court costs and attorney's fees awarded by a court to Enrollees, and all other liabilities which BCBSM may assume or which might otherwise attach with respect to the administration of Coverages pursuant to this Contract, including Schedules A, B, and C. Group shall make full payment and satisfaction to BCBSM for all amounts resulting from such risks, financial obligations, and liabilities.

B.   **Scheduled Payments by Group.**

Group shall make payments of amounts due and owing as set forth on Schedule A, including, but not by way of limitation, (1) administrative fee per Employee and additional administrative compensation, if any; (2) the hospital advance; and (3) Amounts Billed.

C.   **Interest.**

Pursuant to the instructions in Schedule A, Group shall pay the Estimated Weekly Payment to a designated BCBSM bank account, which funds other BCBSM accounts. To the extent any of those bank accounts are interest bearing, BCBSM retains any interest earned and will not pay or credit any interest to Group. Additionally, banks holding BCBSM accounts may retain float interest earned on transactions with the funds in those accounts.

D.   **Schedule A Renewals.**

Thirty (30) days prior to each Renewal Date, BCBSM shall send Group a Schedule A for the new Contract Year with all pricing terms, including BCBSM's administrative fee, applicable AAC, interest rates, and any new Michigan hospital advance. Such Schedule A may specify the pricing terms for a single Contract Year or, with the agreement of BCBSM and Group, may specify the pricing terms for multiple Contract Years. The renewal term Schedule A as received by the Group shall be considered fully executed and effective on the Renewal Date unless the Group notifies BCBSM prior to the Renewal Date that the contract will not be renewed.

E.   **Group's Weekly Wire and Other Payments.**

Group shall make weekly payments of all amounts due to BCBSM within one business day of the payment day set forth in the Schedule A. In addition, Group shall pay to BCBSM any separately invoiced amounts within fifteen (15) days of invoice or settlement receipt. If Group's payment for any amount payable under this Contract is more than one business day late, Group shall pay a late fee of the lesser of two percent of any outstanding amount due or the maximum amount permitted by law. In addition, BCBSM may cease to process Claims retroactive to the last date for which full payment was made.

F.   **Settlements.**

1.   Annual Settlements. Group shall receive its Annual Settlement approximately one hundred twenty (120) days after the end of each Contract Year, which may include a reconciliation of the administrative fee based on BCBSM's enrollment records for the Contract Year at the time the reconciliation is performed. Because reconciliation of Group's hospital Claims depends on BCBSM's final settlement with the hospitals, a separate settlement process called CSR, explained below, captures that reconciliation.

If the Group has an arrangement whereby it pays AAC, the total AAC reported to Group with the Annual Settlement equals the total amount of AAC collected from Group during the year in Amounts Billed less any AAC that was refunded to Group pursuant to a stop-loss insurance policy

8

with BCBSM. If the total AAC exceeds the maximum AAC set forth in Schedule A, BCBSM shall return the excess AAC to Group. If the total AAC is less than the minimum AAC set forth in Schedule A, Group shall pay BCBSM the shortfall. Neither Group nor BCBSM shall pay any interest on these payments/refunds.

2.  <u>Customer Savings Refund</u>. Customer Savings Refund (CSR) is the annual report reconciling Group's Amounts Billed during the 12-month period 7/1 – 6/30 with any of the following items settled during the same period: (1) retroactive adjustments made in the Michigan Hospital Settlement (MHS), explained below, (2) drug rebates received pursuant to Group's Pharmacy Benefits arrangement, (3) class action recoveries, and (4) any other settlements from litigation and provider audits for which claim readjudication is not practicable.

    If a refund is due, Group will receive a CSR payment in the year following the close of the CSR period. In the case of a liability resulting from the MHS, the liability will be reported to Group in the year following the close of the CSR period. A liability will accumulate with interest and be offset against future CSR payments. BCBSM may in its sole discretion elect not to offset any MHS liability against some or all drug rebates.

    MHS liabilities will continue to accumulate from year to year unless Group elects to pay the liability or CSR payments in subsequent years exceed the amount of Group's outstanding MHS liability. BCBSM may in its sole discretion invoice Group for some or all of Group's CSR liability, which invoice shall be paid within thirty (30) days of receipt by Group.

    The MHS is designed to reconcile amounts BCBSM paid to a hospital during a year with the total amount of reimbursement due to the hospital. Pursuant to separate agreements between BCBSM and Michigan hospitals, BCBSM makes periodic estimated payments to each hospital based on expected claims for all BCBSM customers. At the end of the contract year with the hospital, BCBSM settles the amount the hospital received in payments with actual claims experience, hospital reward and incentive payments under Quality Programs, and hospital obligations to Quality Programs. The MHS will result in a gain or loss applied to Group's CSR.

    Group will not receive a CSR or incur adjusted liability attributable to a particular hospital until after the finalization of the MHS for a particular hospital. Group's refund or liability attributable to a particular hospital gain or loss, respectively, is proportionate to Group's utilization for that hospital.

G.  **Changes in Enrollment or Coverages – Effect on Pricing Terms.**

    If there is more than a 10 percent (10%) change in the number of Enrollees from the number stated in Schedule A during any month of the Contract Year or a change in Coverages, BCBSM may immediately revise any affected pricing terms in the Schedule A to reflect such changes in Enrollment and/or Coverages. Any revisions will be effective beginning with the next month following thirty (30) day notification by BCBSM to the Group. The revised Schedule A will be treated as executed by Group and effective as of the date it is received by Group.

<div align="center">

**ARTICLE IV**
**TERMINATION AND TERMINATION ASSISTANCE**

</div>

A.  **Termination & Notice.**

    1.  <u>With or Without Cause.</u> Either party may with or without cause provide notice of intent to terminate this Contract by giving written notice to the other party. For the ninety (90) days following such written notice, each Party's obligations and entitlements will remain unaltered. At the conclusion of this ninety (90) day notice period, no claims with service dates following the conclusion of the ninety (90) day notice period will be approved and the Transition Assistance Period ("TAP") will begin, which will conclude 24 months later, at which time the contract will be terminated.

2.  <u>Nonpayment, Partial Payment, Insolvency, or Bankruptcy.</u>  Notwithstanding any other Contract provisions, if Group fails to timely pay any amounts owed or becomes insolvent or files for bankruptcy protection, BCBSM may at its option, after giving five (5) days notice in writing, cause the contract to immediately enter the TAP.

3.  <u>Termination within the First Contract Year.</u>  If Group gives notice of termination of the Contract before the end of the first Contract Year or if BCBSM terminates the contract under paragraph (2.) before the end of the first Contract Year, Group's total administrative fee liability to BCBSM shall be twelve months of administrative fees at the rate stated in Schedule A in order to compensate BCBSM for the costs of setting up and implementing the arrangement.  Group's termination liability for administrative fees shall be determined using the average monthly enrollment prior to termination times twelve months, and shall be net of administrative fees paid prior to termination.

B.  **Transition Assistance Period.**

Once written notice of termination has been given under Section A of this Article and the notice period has expired, the parties will continue to perform, and this Contract will continue, with respect to each party's obligations related to the wind-down of this Contract as set forth in this Section for the TAP.  Upon the expiration of the TAP, this Contract shall terminate.  The date on which the applicable notice period has expired following a termination trigger and on which the TAP commences will be called the "TAP Effective Date."

1.  <u>End of Coverage.</u>  Notwithstanding any other provisions contained herein, neither BCBSM nor any BCBS Plan shall have any obligation for payment for any health care services which are incurred after the TAP Effective Date.

2.  <u>Obligation to Pay.</u>  Notwithstanding any other provisions contained herein, Group's obligation to pay amounts incurred under the Contract shall survive during the TAP, and Group shall continue to timely pay all amounts owed.  All Claims incurred prior to the TAP Effective Date, but not paid before that date, shall be processed by BCBSM or other BCBS Plans pursuant to the terms and conditions in this Contract and separate agreements with providers.  Group agrees that it shall have no right to have any Claims incurred before the TAP Effective Date processed by a replacement carrier or administrator.

    BCBSM retains the right to cease paying Claims if, during the TAP, Group fails to timely pay BCBSM for Amounts Billed and/or if Group is insolvent and/or files for bankruptcy protection.  Group represents and warrants that it understands that it will be solely liable for any Claims BCBSM does not pay as a result of Group's failure to make timely payment to BCBSM, and Group will indemnify, defend, and hold BCBSM harmless for any Litigation or other adversary proceeding brought by an Enrollee whose claim was not paid by BCBSM as a result of Group's failure to timely pay BCBSM.  This paragraph is independent of BCBSM's rights under Art. IV.A.2.

3.  <u>Claim Payments.</u>  For the first three (3) months following the TAP Effective Date, Group shall make weekly payments in the same manner as prior to the TAP Effective Date; however, Group shall pay the fixed administrative fee for only the first two months after the TAP Effective Date.  AAC, if any, will continue to be paid for the TAP.  For the next twenty-one (21) months, BCBSM will invoice Group each month and Group shall make payments to BCBSM.  After six months from the TAP Effective Date, BCBSM shall offset any Amounts Billed against the Michigan hospital advance.

4.  <u>Settlement–Last Contract Year.</u>  Within one hundred eighty (180) days following the TAP Effective Date, BCBSM shall prepare a settlement statement for the last Contract Year.  Such settlement statement shall include any compensation to BCBSM, including administrative fees.

5.  <u>Interest.</u>  If the total amount of the estimated Amounts Billed included in the weekly payments made during the first three (3) month period following termination exceed the actual Amounts Billed during the period, BCBSM will pay the Group interest at the then rate for short term government treasury bonds (STIGB), which is currently calculated as a rolling twelve-month

10

average of the 90-day T-Bill yield rate on the average monthly balance of any excess. The total amount of any excess will be included in the settlement for the last Contract Year.

6. <u>Final Settlement.</u> Within ninety (90) days after the expiration of the Transition Assistance Period, BCBSM will prepare a final settlement and will refund any positive balance or invoice Group for any negative balance. Any negative balance will be due within ten (10) days of the date of invoice. The payment to Group or to BCBSM as provided in the immediately preceding sentence shall fully and finally settle, release, and discharge each party from any and all claims that are known, unknown, liquidated, non-liquidated, incurred-but-not-reported, adjustments, recoupments, receivables, recoveries, rebates, hospital settlements, and other sums of money due and owing between the parties and arising under this Contract.

7. <u>Group Duty to Notify/Indemnity.</u>   Group shall notify BCBSM if, as a result of its insolvency or other status, another party is required by law to receive any refunds, payments, or returned funds from BCBSM under this Article IV. Group shall indemnify, defend, and hold BCBSM harmless for any liability, including attorney fees, resulting from Group's failure to notify BCBSM under this paragraph.

C.  **Conversion to Underwritten Group.**

If Group converts from a self-funded group to a BCBSM underwritten group, Group shall continue to be obligated for any balance due and Group shall timely pay the amounts due and owing under this Contract in addition to any premium payments as a BCBSM underwritten group.

**ARTICLE V**
**GENERAL PROVISIONS**

A.  **Entire Agreement.**

This entire Contract, including Schedules, represents the entire understanding and agreement of the parties regarding matters contained herein. This Contract supersedes any prior verbal or written agreements and understandings between the parties and shall be binding upon the parties, their successors or assigns.

B.  **Indemnity.**

Group agrees to indemnify, defend and hold BCBSM harmless from any claims resulting from Group's breach of any term of this Contract and/or breach of any obligation or duty not expressly delegated to BCBSM in this Contract, including, but not limited to, Group's obligation to manage enrollment, to disclose Plan information to Enrollees, to respond to requests for Plan documents, and to read and understand the terms of this Contract.

The indemnity and hold harmless provisions of this Contract shall survive the termination of the Contract.

C.  **Service Mark Licensee Status.**

BCBSM is an independent licensee of BCBSA and is licensed to use the "Blue Cross" and "Blue Shield" names and service marks in Michigan. BCBSM is not an agent of BCBSA and, by entering into this Contract, Group agrees that it made this Contract based solely on its relationship with BCBSM or its agents. Group agrees that BCBSA is not a party to this Contract, has no obligations under this Contract, and that no BCBSA obligations are created or implied under this Contract.

D.  **Notices.**

Unless otherwise provided in this Contract, any notice required shall be given in writing and sent to the other party either by hand-delivery, electronic mail message to designated representative of the

11

other party, or postage pre-paid US first class mail at the following address or such other address as a party may designate from time to time.

If to Group:

Current address shown on
BCBSM Group Header

If to BCBSM:

Blue Cross Blue Shield of Michigan
600 Lafayette East, Mail Code B612
Detroit, Michigan 48226-2998

E.     Amendment.

This Contract may be amended only by a written agreement duly executed by authorized representatives of each party provided, however that this Contract may be amended by BCBSM upon written notice to Group in order to facilitate compliance with applicable law including changes in regulations, reporting requirements or data disclosure as long as such amendment is applicable to all BCBSM groups that would be similarly affected by the legal change in question.  BCBSM will provide thirty (30) calendar days notice of any such amendment and regulatory provision, unless a shorter notice is necessary in order to accomplish regulatory compliance.

Upon request by Group BCBSM will consult with Group regarding the regulatory basis for any amendment to this Contract as a result of regulatory requirements.

F.     Severability.

The invalidity or nonenforceability of any provision of this Contract shall not affect the validity or enforceability of any other provision of this Contract.

G.     Waiver.

The waiver by a party of any breach of this Contract by the other party shall not constitute a waiver as to any subsequent breach.

H.     Law.

This Contract is entered into in the State of Michigan and, unless preempted by federal law, shall be construed according to the laws of Michigan. Group agrees to abide by all applicable state and federal law.  Group agrees that, where applicable, the federal common law applied to interpret this Contract shall adopt as the federal rule of decision Michigan law on the interpretation of contracts. .

I.     HIPAA.

1.     Group Certification.

Group certifies that it is the Plan Sponsor and Plan Administrator, performs Plan administration functions, needs access to Enrollee protected health information to carry out such administration functions, and has amended the Plan documents to comply with the requirements of 45 CFR 164.504(f)(2). BCBSM is therefore authorized to provide Group with the minimum necessary Enrollee protected health information for Group to perform its plan administration functions.

2.     Business Associate Agreement.

The parties shall enter into a business associate agreement.

J.     Force Majeure.

Neither BCBSM nor Group shall be deemed to have breached this Contract or be held liable for any failure or delay in the performance of all or any portion of its obligations under this Contract if

12

prevented from doing so by acts of God or the public enemy, fires, floods, storms, earthquakes, riots, strikes, boycotts, lock-outs, wars and war-operations, restraints of government, power or communication line failure, judgment, ruling, order of any federal or state court or agency of competent jurisdiction, change in federal or state law or regulation subsequent to the execution of this Contract, or other circumstances beyond the party's reasonable control for so long as such "force majeure" event reasonably prevents performance.

K. **Group Disclosure of Other Coverage Vendors.**

Group agrees that, to the extent that BCBSM does not administer all of Plan's "essential health benefits," as that term is defined by the PPACA, Group shall identify for BCBSM all those vendors ("Vendors") that are also providing or administering essential health benefits to the Plan's participants, the benefits the Vendors are providing to them, the number of participants receiving such benefits, and the cost sharing arrangements for such benefits.

In addition, Group shall cause its officers, directors, employees, and representatives and Vendors' officers, directors, employees and representatives to fully and timely cooperate with BCBSM and provide it with the necessary information for BCBSM to ensure its compliance and that of the Plan with PPACA to the extent BCBSM is obligated to do so by law or by contract. This information includes, but is not limited to, social security numbers or other forms of government identification numbers of each Plan participant and beneficiary.

Group is solely responsible to ensure Group's maximum out-of-pocket amount is in compliance with PPACA. If BCBSM agrees to assist Group in determining whether Group's maximum out-of-pocket amount is in compliance with PPACA, then Group authorizes all Vendors to, and shall inform the Vendors in Group's contract with them that they must, effective on the beginning of the Group's first plan year on or after January 1, 2014, disclose to BCBSM on a daily basis (or some other regularly scheduled period as determined by BCBSM) all claims data for the essential health benefit(s) of Plan participants and beneficiaries that they possess.

L. **Other Data Requirements.**

Group agrees to provide to BCBSM all data reasonably necessary for BCBSM to comply with the requirements of PPACA or other applicable federal or state laws. Such data includes, but is not limited to, all Enrollee data needed to comply with any reporting or other requirements of PPACA, *e.g.*, the employer's share of any premium and social security or tax identification numbers. Group certifies that if it fails to provide all the data requested and if it has provided such information to BCBSM in response to a previous request, then Group shall be deemed to have certified to BCBSM that such information previously supplied remains correct and can be relied upon.

Group and Group's Vendors will maintain relevant books, records, policies, procedures, internal practices, and/or data logs relating to this Contract in a manner that permits review for a period of seven (7) years or (ten (10) years in the case of Medicare/Medicaid transactions) after the expiration of this Contract. With reasonable notice and during usual business hours, BCBSM, or its designated third party (with appropriate confidentiality obligations), may audit those relevant books, records, policies, procedures, internal practices, and/or data logs of Group and/or its Vendors, as necessary, to verify calculations related to the imposition of any taxes and fees under PPACA or other federal or state laws and to ensure compliance with this Contract and any applicable federal and state laws. Group shall cooperate with BCBSM in all reasonable respects in connection with such audits.

BCBSM's failure to detect, failure to notify Group of detection, or failure to require Group's remediation of any unsatisfactory practices does not relieve Group of its responsibility to comply with this Contract or applicable law, does not constitute acceptance of such practice, and does not constitute a waiver of BCBSM's enforcement rights under this Contract or applicable law.

If Group conducts, or contracts to have conducted, an internal audit or review of the services performed under any agreement with BCBSM, Group shall provide BCBSM with a copy of such audit or review within thirty (30) days of BCBSM's written request. This also applies to audits/reviews performed by or at the request of any federal or state regulatory agencies of BCBSM services. The

13

selection of an independent auditor by Group to conduct an internal audit of Group does not preclude BCBSM from conducting an audit in accordance with the terms contained herein.

The provisions of this Section shall survive the termination of this Contract.

M.    **Grandfather Status; Women's Preventative Care Religious Exemption.**

Group acknowledges and agrees that unless a written certificate of grandfather status and indemnity in form and substance satisfactory to BCBSM was previously provided to BCBSM by Group or, for a Group new to BCBSM as of January 1, 2013, was provided to and accepted by BCBSM concurrently with the signing of this Contract, Group will be considered non-grandfathered for all purposes.

In addition, Group acknowledges that the health care coverages provided to its Enrollees will include recommended women's preventive health services without cost sharing (as required by PPACA) unless the Plan (i) is a grandfathered group health plan that has not provided such coverage or (ii) qualifies as either an exempt group health plan or one eligible for the temporary safe harbor under PPACA and has provided a certificate to that effect in form and substance satisfactory to BCBSM.

N.    **Summary of Benefits and Coverage.**

Group is solely responsible for compliance with the federal Summary of Benefit and Coverage (SBC) rules, including SBC creation and distribution. BCBSM does not assume any responsibility for SBC rule compliance relating to the Plan, or for creation or disclosure of compliant SBCs. BCBSM disclaims any liability or responsibility for any non-compliance by Plan with SBC rules and regulations relating to creation, disclosure or other requirements.

O.    **Plan Year.**

Group's Plan Year, as that term is defined in PPACA, is the one year period beginning on the Effective Date and ending one year (or less) later on the last day of the month immediately preceding the month in which the Effective Date falls ("Effective Date Month"). Each Plan Year thereafter shall begin on the first day of the Effective Date Month and end one year later.

If Group's Plan Year that is not consistent with that reflected in the preceding paragraph, Group will promptly notify BCBSM in writing. Group will notify BCBSM at least six months in advance of any change in the Plan Year.

P.    **Knowing Assent.**

Group acknowledges that it has had full opportunity to consult with such legal and financial advisors as it has deemed necessary or advisable in connection with its decision knowingly to enter into this Contract. Group acknowledges that it is its obligation as Plan Fiduciary to determine whether the financial arrangements set forth in this Contract and Schedules are an appropriate Plan expense and for the exclusive benefit of the Plan. Group acknowledges that it has had any questions about this Contract posed to BCBSM fully answered to Group's satisfaction.

Neither party has executed this Contract in reliance on any representations, warranties, or statements other than those expressly set forth herein.

Q.    **Group Health Plan Type; Attestation.**

Is Groups' Plan governed by ERISA?    ☐ Yes.    ☒ No.

Group attests that, to the best of its knowledge, this response is correct and acknowledges that BCBSM will rely on this response to determine requirements applicable to Group and the performance of this Contract.

ASC Weekly Invoiced Program – CID# 279476

AGREED AND ACCEPTED.

BCBSM:

GROUP:

| | | | | |
|---|---|---|---|---|
| By: _(Signature)_ | _Ypone Migal_ | | By: _(Signature)_ | |
| Name: _(Print)_ | _Yvone Moore_ | | Name: _(Print)_ | M. Therese Brumfield |
| Title: | Asst Mgr. | | Title: | VP, Provider Operations |
| Date: | 5/24/16 | | Date: | 5-23-16 |

| | | | | |
|---|---|---|---|---|
| By: _(Signature)_ | _Gary K Maw_ | | By: _(Signature)_ | |
| Name: _(Print)_ | Gary R. Gauin | | Name: _(Print)_ | |
| Title: | VP, KLGBD | | Title: | |
| Date: | 6-16-16 | | Date: | |

15

# EXHIBIT F

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

|  |  |
|---|---|
| BLUE CROSS BLUE SHIELD OF MICHIGAN, | Case No. 22-cv-11598 |
| Plaintiff, | Hon. Mark A. Goldsmith |
| v. |  |
| CORIZON HEALTH, INC., |  |
| Defendant, |  |

## JOINT PROPOSED RULE 26(f) DISCOVERY PLAN

Plaintiff Blue Cross Blue Shield of Michigan ("Plaintiff" or "BCBS") and Defendant Corizon Health, Inc. ("Defendant" or "Corizon") (together, the "parties"), represented by the undersigned counsel, met by conference call on August 10, 2022. Pursuant to Fed. R. Civ. P. 26(f) and the Court's Order Regarding Telephonic Scheduling Conference (Doc. No. 5), the parties submit the following Joint Proposed Discovery Plan.

| Event | Proposed Deadline |
|---|---|
| Initial Disclosures under Fed. R. Civ. P. 26(a)(1) | September 15, 2022 |
| Lay Witness List | January 19, 2023 |
| Exhibit List | January 19, 2023 |
| Expert Witness List/Disclosures/Report – Plaintiff | January 26, 2023 |

| Expert Witness List/Disclosures/Report – Defendant | February 16, 2023 |
|---|---|
| Discovery – Fact and Expert | March 2, 2023 |
| Dispositive Motions & Motions to Limit/Exclude Expert Testimony | March 16, 2023 |
| Estimated Length of Trial | 3 to 4 days |

## I.     BRIEF SUMMARY OF THE CASE

**Plaintiff:** In December of 2015, Plaintiff, Blue Cross Blue Shield of Michigan, and Defendant, Corizon Health Incorporated, signed an administrative services contract ("The Contract"), in which Plaintiff processed medical claims for incarcerated individuals at Michigan correctional facilities serviced by Defendant. BCBSM would receive claims for individuals incarcerated in the Michigan Department of Corrections system. BCBSM would process and pay those claims pursuant to the Contract with Corizon. BCBSM would then invoice Corizon for the claims it paid on its behalf along with an administrative service fee. Both parties performed under this contract until September 29, 2021, when Corizon terminated the Contract. Prior to the termination, Corizon had been paying BCBSM's invoices without objection. Pursuant to the terms of The Contract, Defendant is responsible for reimbursing Plaintiff for all fees incurred prior to September 29, 2021, which is the date the termination became effective.

Plaintiff provided an Invoice to Defendant detailing the amount owed, which totals $3,410,136.51. As of early 2022, Defendant had yet to make any payments towards the amount owed. Plaintiff mailed a demand letter to Defendant in March of 2022 detailing the amount due and owing. Defendant did not respond to this letter and did not object to the amount owed. As of today's date, Defendant has not provided any evidence to dispute the amount owed and has not made any payments towards the amount owed to Plaintiff.

Furthermore, Defendant has failed to provide any evidence to dispute the amount owed. Based upon Defendant's lack of evidence disputing the amount owed Plaintiff anticipates that it will move for summary judgment in this matter.

**Defendant:** Corizon is a correctional healthcare company. Corizon contracted with the State of Michigan to provide healthcare services at numerous facilities across the State. In December of 2015, BCBS and Corizon executed an administrative services contract (the "Contract"), pursuant to which Plaintiff processed medical claims on behalf of Corizon for individuals incarcerated at Michigan correctional facilities serviced by Corizon. The Contract contained several requirements that had to be satisfied for reimbursements to be made by Corizon to BCBS. Corizon terminated the Contract on or about September 29, 2021, and the termination became effective on September 29, 2021.

After termination of the Contract, BCBS demanded that Corizon pay it $3,410,136.51 in claims. Corizon denies the validity of many of the claims submitted by BCBS. Corizon further denies that it owes BCBS $3,410,136 and expressly submits that it made payments toward this amount. Finally, Corizon disputes that BCBS is entitled to attorneys' fees as the Contract has no fee-shifting provision as to litigation between the parties.

## II. SUBJECT MATTER JURISDICTION

Corizon removed this matter from the Circuit Court for Macomb County, Michigan on July 14, 2022 on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441(a). BCBS did not move to remand this matter to the Circuit Court for Macomb County, Michigan. The parties agree that this Court has subject-matter jurisdiction over BCBS' Complaint pursuant to 28 U.S.C. § 1332(a).

## III. RELATIONSHIP OF CASE TO OTHER CASES

The parties agree that this matter has no relationship to any other pending or resolved matter(s).

## IV. CONTEMPLATED AMENDMENTS

**Plaintiff:** Blue Cross Blue Shield of Michigan does not anticipate amending its pleadings at this time.

**Defendant:** Corizon does not anticipate amending its pleadings at this time.

## V. FACILITATION/ARBITRATION/CASE EVALUATION

The parties are willing to participate in non-binding facilitation at the appropriate time in this case.

## VI. MOTIONS

**Plaintiff:** Based upon Defendant's lack of evidence disputing Plaintiff's Account Stated claim, Plaintiff is entitled to judgment as a matter of law in this case pursuant to Fed. R. Civ. P. 56 and Plaintiff anticipates filing a Motion for Summary Judgment. Plaintiff reserves the right to revise this response.

**Defendant:** Corizon does not anticipate filing any motions at this time. Corizon expressly reserves the right to revise this response.

## VII. SETTLEMENT

The parties consent to an early settlement conference and/or final settlement conference to be conducted by the Court, by another judicial officer, or by a third party mutually agreed upon by both parties.

## VIII. ANTICIPATED DISCOVERY, DISCOVERY ISSUES, ESI, PRIVILEGED MATERIALS, AND EXCHANGE OF CONFIDENTIAL INFORMATION

**Plaintiff:** At this time, Blue Cross Blue Shield of Michigan anticipates serving written discovery and requesting depositions pertaining to the following: (1) the execution, negotiation, and termination of the Contract; (2) any evidence or lack of evidence relating to Corizon's affirmative defenses in this matter; (3) Corizon's payments to Blue Cross Blue Shield between December of 2015 and into 2021; (4)

Corizon's failure to fully reimburse Blue Cross Blue Shield under the Contract; (5) Corizon's aforementioned denial of the amount owed; (6) communications and information related to Corizon's relationship as a Third Party Administrator for the Michigan Department of Corrections during all relevant times; and (7) all evidence relating to Corizon's financial situation, which may be used as an excuse for failing to pay. Blue Cross Blue Shield expressly reserves the right to modify this list of anticipated discovery topics.

**Defendant:** At this time, Corizon anticipates serving written discovery and requesting depositions pertaining to the following: (1) the execution, negotiation, and termination of the Contract; (2) BCBS' processing of medical claims on behalf of Corizon; (3) BCBS' satisfaction of the contractual requirements for reimbursements to be made by Corizon; (4) the validity of claims submitted for reimbursement by BCBS; (5) BCBS' demand for payment of $3,410,136.51 in claims; and (6) Corizon's prior payment of claims included within BCBS' $3,410,136.51 demand. Corizon expressly reserves the right to modify this list of anticipated discovery topics.

The parties anticipate being able to complete fact and expert discovery by March 2, 2023. The parties do not foresee any needed changes at this time to the limitations on discovery as set forth in the Federal Rules of Civil Procedure. The parties reserve their rights to request discovery beyond these limitations. The parties

6

further reserve the right to object to discovery or request a protective order regarding any discovery based on relevance or any other appropriate ground.

The parties have taken reasonable steps to preserve discoverable information related to this case. The parties do not anticipate any issues relating to the disclosure or discovery of electronically stored information nor any issues relating to claims of privilege or protection of trial-preparation materials. The parties will meet and confer in an effort to develop an electronically-stored information ("ESI") Protocol to govern the discovery of ESI, privilege logs, and the inadvertent disclosure of privileged information. The parties will also meet and confer (a) to develop a protective order to ensure that confidential and other sensitive information exchanged in discovery is adequately protected; and (b) to agree upon terms for remote depositions.

Respectfully submitted,

KITCH DRUTCHAS WAGNER
VALITUTTI & SHERBROOK

By: /s/ Gabe Sybesma
Gabe Sybesma (66632)
Paul Wilk Jr. (83691)
One Woodward Avenue, Suite 2400
Detroit, MI 48226-5485
*Attorneys for Plaintiff*

Date: August 11, 2022

BUTZEL LONG

By: /s/ Phillip C. Korovesis
Phillip C. Korovesis (40579)
150 West Jefferson Ave., Suite 100
Detroit, MI 48226
313-225-7000
korovesis@butzel.com
*Attorney for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 11, 2022, a copy of the foregoing was filed electronically with the Clerk's office by using the CM/ECF system and served electronically upon all counsel as indicated below. Parties may also access this filing through the Court's ECF system.

*/s/ Phillip C. Korovisis*
Phillip C. Korovesis

# EXHIBIT G

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

BLUE CROSS BLUE SHIELD OF )
MICHIGAN, )
)
    Plaintiff, )   Case No. 22-cv-11598
)
v. )   Hon. Mark A. Goldsmith
)
CORIZON HEALTH, INC., )
)
    Defendant. )

---

## DEFENDANT CORIZON HEALTH, INC'S RULE 26(A)(1) INITIAL DISCLOSURES

---

Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A), Defendant Corizon Health, Inc. ("Corizon" or "Defendant") makes the following initial disclosures. In doing so, Corizon notes that the following disclosures are preliminary and based on facts known at this time. Accordingly, pursuant to Federal Rule of Civil Procedure 26(e), Corizon reserves the right to add any other relevant information identified through discovery.

**(A)**   **Persons with Knowledge of Discoverable Information.** Persons likely to have discoverable information that Corizon may use to support its claims or defenses (other than information solely for impeachment) include:

**(1)**   **Isaac Lefkowitz** (may be contacted through undersigned counsel) may

have information concerning the execution of the relevant contract, terms and negotiation of the relevant contract, renewal(s) of the relevant contract, processing and payment of claims pursuant to the relevant contract, inaccuracies in Plaintiff's billing and invoices, the termination of the relevant contract, and the demand letter received from Plaintiff on or about March 18, 2022.

(2)   **Mason Gill** (may be contacted through undersigned counsel) may have information concerning the terms of the relevant contract and renewal(s) of the relevant contract.

(3)   **Jeff Sholey** (may be contacted through undersigned counsel) may have information concerning payments made by Corizon pursuant to the relevant contract and the demand letter received by Plaintiff on or about March 18, 2022.

(4)   **Eugene Mitchell** (may be contacted through undersigned counsel) may have general information concerning the contractual relationship between Plaintiff and Corizon.

(5)   Plaintiff has information regarding the claims and allegations in the Complaint.

(6)   Any other persons identified by Plaintiff.

Discovery in this matter has just begun and Corizon is not fully aware of the information potentially possessed by certain individuals or the identity of individuals who may possess discoverable information. Accordingly, pursuant to Federal Rule

of Civil Procedure 26(e), Corizon reserves the right to identify additional persons who may have discoverable information that it may use to support its claims or defenses as such persons are discovered.

**(B)** **Documents, data compilations, and tangible things.** Documents, data compilations, and tangible things in the possession, custody, or control of Corizon and that Corizon may use to support its claims or defenses, unless solely for impeachment, are described by category and location:

**(1)** The Administrative Services Contract between Plaintiff and Defendant and all amendments, renewals, or addendums thereto – attached to Complaint and in Defendant's files

**(2)** Written communications related to the negotiation of the Administrative Services Contract referenced above and all amendments, renewals, or addendums thereto – stored on Defendant's electronic servers

**(3)** Proof of payments made by Defendant pursuant to the Administrative Services Contract – stored on Defendant's electronic servers

**(4)** Invoices issued under the Administrative Services Contract – stored on Defendant's electronic servers

**(5)** Correspondence regarding payment or billing disputes – stored on Defendant's electronic servers

Pursuant to Federal Rule of Civil Procedure 26(e), Corizon reserves the right

to identify additional documents, data compilations, and tangible things relevant to its claims and/or defenses.

**(C)    Computation of Damages.**

Corizon is not presently claiming damages, but reserves all rights to do so if warranted by discovery in this matter.

**(D)    Insurance agreements.**

To the best of Corizon's knowledge, no such agreements exist.

<div style="margin-left: 50%;">

Respectfully submitted,

BUTZEL LONG

By: /s/ Phillip C. Korovesis
Phillip C. Korovesis (40579)
150 West Jefferson Ave., Suite 100
Detroit, MI 48226
313-225-7000
korovesis@butzel.com
*Counsel for Defendant*

</div>

Date:  September 15, 2022

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 15, 2022, a copy of the foregoing was served electronically and/or via first-class U.S. mail, postage prepaid, upon all counsel as indicated below.

> Gabe Sybesma
> Paul Wilk Jr.
> Kɪᴛᴄʜ Dʀᴜᴛᴄʜᴀs Wᴀɢɴᴇʀ Vᴀʟɪᴛᴜᴛᴛɪ
> & Sʜᴇʀʙʀᴏᴏᴋ
> One Woodward Avenue, Suite 2400
> Detroit, MI 48226-5485
> gabe.sybesma@kitch.com
> paul.wilks@kitch.com

> */s/ Kelly Skarbek*
> Kelly Skarbek

# EXHIBIT H



YesCare
Say Yes To Exceptional Care

Home   About   Services   Choosing YesCare   Contact   News   Careers

Our Motivation

healthcare is
not just a job.
It's a calling.

See All Available Positions

CAREERS





YesCare
Say Yes To Exceptional Care

As the correctional healthcare pioneer and leader for 40
years, YesCare provides client partners with high quality
healthcare and reentry services that will improve the health
and safety of our patients, break the cycle of recidivism and
better the communities where we live and work.

*YesCare acquired all of the employees and active contracts of
Corizon Health in early 2022.

## Quick Links

Home

About

Services

Choosing YesCare

Contact

Our Motivation

Claims

Careers

## Contact

Job Inquiries:
800-989-7471
careers@yescarecorp.com

Media Inquiries:
media@yescarecorp.com

Business Development:
clientservices@yescarecorp.com

